UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco

| | |
|---|---|
| ANGELO BOTTONI, *et al.*, | No. C 10-03602 LB |
| Plaintiffs, | **ORDER RE OUTSTANDING DISCOVERY LETTERS** |
| v. | |
| SALLIE MAE, INC, | [ECF Nos. 74 and 75] |
| Defendant. | |

## I. INTRODUCTION

This putative diversity class action involves claims that Defendant Sallie Mae assessed collection charges of 25% of the principal and interest due (regardless of the actual collection costs incurred) against borrowers who defaulted on their private student loans. *See* Second Amended Complaint, ECF No. 37. The parties filed two joint discovery letters in February 2012 setting forth their many disagreements but subsequently stayed all discovery (including resolution of their disputes) until April 17, 2012. *See* 2/21/2011 and 2/23/2012 letters, ECF Nos. 74-75; 3/8/2012 Stipulation and Order.[1] On May 4, 2012, the parties advised the court that the case had not settled and asked the court to consider their disputes. *See* ECF No. 87. Thereafter, at the parties' scheduled case management conference on May 31, 2012, the court addressed all issues and now issues this order memorializing the decisions for the reasons stated on the record and summarized below.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

## II. DISCUSSION

A. **2/21/2012 Letter**

**Issue 1: Sallie Mae's Production of "Relevant" but not "Responsive" Documents**

The parties dispute whether Defendant's response to Plaintiffs' Request for Production No. 1 ("RFP 1"), which calls for all documents in Defendant's possession that concern Plaintiffs, is insufficient because Defendant appears to have withheld responsive documents that it deemed irrelevant. 2/21/2012 Letter, ECF No. 74 at 2.

- The court accepts Sallie Mae's representations in court that it produced all relevant, nonprivileged documents that are responsive to Plaintiffs' request for production.
- Sallie Mae must produce a privilege log that complies with this court's standing order absent stipulation of the parties or further order of the court.
- The court appreciates that everyone is trying to maintain their respective litigation positions and that disagreements are stressful but probably counsel could have resolved this one on their own.

**Issue 2: Sallie Mae's Failure to Produce Documents Involving Third-Party Debt Collectors**

The parties disagree about whether Sallie Mae's response to Plaintiffs' Request for Production No. 1 ("RFP 1"), which calls for all documents in Defendant's possession that concern Plaintiffs, is insufficient because Sallie Mae produced no documents from its third-party debt collectors. *Id.* at 2. In a similar vein, Plaintiffs argue that Salle Mae should produce (1) communications with any third-party debt collectors about the class, (2) documents that reflect actual collection costs, (3) documents with credit reporting agencies regarding Plaintiffs, and (4) documents showing Salle Mae's payments to third-party debt collectors that it hired to collect on the loans. *Id.* at 3.

- Sallie Mae said that it is producing its contracts with third-party debt collectors, and the court orders it to do so promptly.
- Information about collection efforts against class members may be in Sallie Mae's possession, or it may be in the possession of third-party debt collectors. If Sallie Mae has the information, it should produce it (subject to the rules about class action discovery and privacy issues set forth below). The court assumes collection efforts should be documented

in electronic form (such as a readily-accessible electronic format that is easy to generate in the form of a data production). If information in Sallie Mae's possession is kept in a difficult-to-access format (such as in individual paper files by borrower), Sallie Mae must produce how it files information about its collection efforts to enable Plaintiffs to consider how to access it.

- For now, pending the document productions contemplated by this order and Plaintiffs' review of the contracts with the third-party collection agents, the court will not require Sallie Mae to obtain and disclose debt collection efforts by its third-party contractors. Separate Rule 45 subpoenas are pending, and to the extent that the third parties ask for Sallie Mae's agreement to disclose the general categories of information contemplated by the court's disclosure orders, Sallie Mae shall convey its agreement promptly. Put another way, the court defers consideration of RFP 1(e) and (g).

- Bottom line: Sallie Mae must produce information in its possession that is responsive to RFP 1 (a)-(d), (f), & (h)-(i).

**Issue 3: How To Produce Private Information About the Borrowers**

The court ruled that Sallie Mae must produce the class information that Plaintiffs request subject to the procedures outlined here. *See* RFP 2 (seeking information in Sallie Mae's borrower data base); RFP 1; 2/21/2012 Letter, ECF No. 74 at 3.

The court's broad discretion regarding class discovery has been discussed extensively in other cases. *See, e.g.*, *Currie-White v. Blockbuster, Inc.*, 2010 WL 1526314, No. C 09 2593 MMC (MEJ) (N.D. Cal. Apr. 15, 2010); *Narayan v. EGL, Inc.,* 2006 WL 3507918, No. C 05-04181 RMW (HRL) (N.D. Cal. Dec. 5, 2006). As the court explained on the record, for similar reasons, the court finds the discovery here appropriate but is mindful of the privacy concerns that attach to potential class members who defaulted on their loans.

Courts balance the following factors when assessing the potential intrusion of pre-certification discovery on the putative class members' right to privacy in their contact information: (1) whether the party has a legally protected privacy interest; (2) whether the party has a reasonable expectation of privacy; and (3) whether production of the information constitutes a serious invasion of privacy."

C 10-03602 LB
ORDER RE DISCOVERY LETTERS         3

*Murphy v. Target Corp.,* No. C 09 1436 AJB (WMC), 2011 WL 2413439, at * 3 (S.D. Cal. June 14, 2011) (citing *Pioneer Electronics (USA), Inc. V. Superior Court,* 40 Cal. 4th 360, 370-371 (2007).

While some courts have held that an opt-out procedure is required to adequately protect the privacy interests of putative class members, *see Pioneer Electronics (USA), Inc. V. Superior Court,* 40 Cal. 4th 360, 370-371 (2007)*; Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554, 561 (2007), other courts have required only a protective order. *See Currie-White v. Blockbuster, Inc.*, No. C 09-2593 MMC (MEJ), 2010 WL 1526314, at *4 (N.D. Cal. April 15, 2010) (holding that a protective order is sufficient to address the privacy issues regarding employer's disclosure of employees' contact information in pre-certification discovery); *Artis v. Deere & Co.*, No. C 10-5289 WHA (MEJ), 2011 WL 2580621, at *4-5 (N.D. Cal. June 29, 2011) (holding that Plaintiffs had a right to discovery of putative class members' contact information with a protective order in place); *Soto v. Commercial Recovery Systems, Inc.*, No. C–09–02842 PJH (DMR), 2011 WL 1298697 (N.D. Cal. Apr. 4, 2011) (stating that the court was "satisfied that the opt-out mailing process proposed by the parties adequately protects the putative class members' privacy" in a case involving a putative class of debtors).

The court's general view is that ordinarily, protective orders are enough, but this case involves special privacy concerns because the class members defaulted on their loans. The court orders the following:

- Sallie Mae is ordered to produce the information requested by Plaintiffs, and that information shall be governed by the existing stipulated protective order.
- The parties agreed that it made sense to adopt an opt-out process with an anonymizing process for any class members opting out but could not agree on the record what process makes sense. The parties shall meet and confer and work it out. If they disagree (and the court expects that they will not), any further dispute should include discussions of processes employed by courts in cases involving similar privacy concerns.

**Issue 4: Accounting Treatment of Collection Penalties**

Plaintiffs ask in RFP Nos. 5 and 6 for documents about Sallie Mae's accounting treatment of collection penalties and actual collection costs. Sallie Mae says that the request is vague. *See*

2/21/2012 Discovery Letter, ECF No. 74 at 5. Accounting treatment is relevant, but Plaintiffs need to articulate more specifically what they want. They may do that now or (perhaps better) later after they review the productions contemplated by this order about amounts actually collected.

**Issue 6: Complaints**

Plaintiffs ask in RFP 26 for documents and communications about complaints about its assessment of collection penalties. Sallie Mae responds that they are irrelevant and potentially inaccessible. 2/21/2012 Letter, ECF No. 74 at 6. They are relevant. As to accessibility, Sallie Mae defined two categories of complaints: complaints in the form of court complaints and general borrower complaints.

As to the first category, Sallie Mae said that it could search its litigation databases and produce information about any similar cases. The court orders that.

As to the second category, Sallie Mae said that complaints were inaccessible in that they are kept in individual borrower files. Sallie Mae represented that there were 36,000 borrowers and that producing complaints would require a file-by-file review. The court does not order that review. Instead, to the extent that Sallie Mae in fact documents complaints in a database, that information should be accessible, and Sallie Mae should produce it. (The court appreciates that Sallie Mae said that it does not track information that way, but many businesses do, so the court mentions it.) Sallie Mae also must produce information about how it tracks complaints, whether that process is documented in policies and procedures or is a matter of practice. Sallie Mae represented that its practices, policies, and procedures should be the same in California and nationally, and it should confirm that in its production.

**B. 2/23/12 Letter**

**Issue 1: Adequacy of Responses**

Plaintiffs argue that Sallie Mae did not respond adequately to the following:

| RFA Or Interrogatory | Brief Summary of Request |
|---|---|
| RFA 19 | Admit that Salle Mae on behalf of itself and others regularly engages in "debt collection." |
| Interrogatory 6 | If you contend that collection penalties are reasonable, identify all documents supporting conclusion. |

| | |
|---|---|
| Interrogatories 7 and 9 | If you contend that the 25% collection assessment is a reasonable assessment of costs, state each fact and identify all documents showing that. |
| Interrogatory 15 | If you contend tht you did not breach the promissory note by collecting and demanding the 25% collection assessment, state each fact showing that. |

For the reasons stated on the record, the contention interrogatories are premature, and the court delays considering them until after document production illuminates the issues. RFA 19 does not allow a yes/no answer, and it involves legal conclusions. All of this will be easier to consider once discovery shows what actually happened with the debt collection and what Sallie Mae's relationship is with its third-party debt collectors.

**Issue 2: Boilerplate Objections Preceding Interrogatory Responses**

Plaintiffs challenge Sallie Mae's "boilerplate" objections:

- Definition of "Sallie Mae" wrongly includes non-parties.
- Definition of "collection penalty" is a bad term that is derogatory.
- Interrogatories seek privileged attorney-client information.
- Contention interrogatories shift the burden of proof on the "reasonableness" prong.

The parties have a lot to accomplish in discovery, and Sallie Mae nonetheless is responding. Given these circumstances, it is a waste of time to wade in the weeds of boilerplate, and the court declines to collectively overrule the objections. Everyone should prefer to focus on the substance of the responses.

The court observes that Rule 26(b) and the privilege log requirement is not limited to requests for production. *See Abels v. JBC Legal Group, P.C.,* No. C 4 2345 JW(RS), 2005 WL 3839308 *4 (N.D. Cal. 2005) (ordering the responding party to "provide a further verified response to Interrogatory No. 4 and/or a privilege log as appropriate"); *Bretana v. International Collection Corp.,* No. C 07-05934 JF (HRL) 2008 WL 4334710 *3 (N.D. Cal. 2008) (granting a motion to compel an interrogatory response and interpreting Rule 26(b)(5) to cover Interrogatories and Requests for Admission; the responding party had "objected that the interrogatories call for information protected by the attorney-client privilege. Defendant apparently has not produced a privilege log as he is required to do under Fed. R. Civ. P. 26(b)(5).") Given the lack of context, the

court is not clear on how this might apply here but trusts that Sallie Mae will produce a privilege log consistent with its obligations under Rule 26(b) and the requirements of this court's standing order.

**Issue 3: Adequacy of Response to Interrogatory 17**

Interrogatory 17 asks how collection penalties are distributed and/or retained by the third-party debt collectors. The court already ordered disclosure of the documents and information showing this in the previous section. It also should be revealed by the contracts (which Sallie Mae says will show a contingency arrangement) and the spreadsheets showing the allocations. Any answer presumably will incorporate that context, whether (a) generally as to how collection assessments are retained by debt collectors and/or given to Sallie Mae or (b) specifically in the context of the documents that answer the interrogatory.

**Issue 4: Adequacy of Response to Interrogatory 18**

Interrogatory 18 asks for the basis for Sallie Mae's formulation of its policy for a 25% collection assessment. Sallie Mae gave a general answer, and that is fine. Sallie Mae also must produce its communications, guidelines, policies, or procedures that discuss how it arrived at the 25% "collection penalty." The court does not intend this to be a burdensome production that requires delving into all communications (like email) that surrounded the development of the assessment. But the court assumes that Sallie Mae has policies or procedures that are relevant to establish why it settled on the the 25%.

**Issue 5: Interrogatory 19**

Interrogatory 19 asks how long Sallie Mae has had the 25% collection assessment in place. Among other things, Sallie Mae says that the request is overbroad. The court is most concerned with burden. The court assumes that Sallie Mae can – by informal sampling – go back some years to see whether the 25% assessment was imposed then. The court assumes that for the category of loans at play in this class actions, the documentation for the loans (including the promissory note with the collection assessment) is standard for all similar loans. And as discussed in the previous section and on the record, Sallie Mae's development of the 25% amount is relevant. But at the same time, the court is mindful of burden arguments, and – leaving aside information about the formulation of the 25% that is the subject of interrogatory 18 – the need for the information probably is met by going

back for a fixed period of time before 2006 (such as ten years back from now).

Given this context, the court orders the parties to meet and confer to work out a relevant time period.

**Issue 6: Interrogatory 25**

Interrogatory 25 asks for facts about Sallie Mae's affirmative defense of "third parties." Sallie Mae said that the parties limited discovery before mediation, its investigation so far does not permit a more robust response, and it will amend its answer when it has more information. The court approves this process.

**C. Process Going Forward**

The court may have revised its discovery procedures slightly since this case's inception. For the parties' convenience, the court excerpts them here (with certain relevant issues bolded).

> 8. **Expedited Procedures for Discovery Disputes.** The parties shall not file formal discovery motions. Instead, and as required by the federal rules and local rules, the parties shall meet and confer to try to resolve their disagreements. *See* Fed. R. Civ. P. 37(a)(1); Civil L. R. 37-1. After attempting other means of conferring such as letters, phone calls, or emails, lead counsel for the parties must meet and confer **in person**. (If counsel are located outside of the Bay Area and cannot confer in person, lead counsel may meet and confer by telephone.) Either party may demand such a meeting with ten days' notice. If the parties cannot agree on the location, the location for meetings shall alternate. Plaintiff's counsel shall select the first location, defense counsel shall select the second location, and so forth. If the parties do not resolve their disagreements through this procedure, the parties shall file a joint letter brief **of no more than five pages** instead of a formal motion five days after lead counsels' in-person meet-and-confer. The letter brief must be filed under the Civil Events category of "Motions and Related Filings > Motions – General > Discovery Letter Brief." Lead counsel for both parties must sign the letter and attest that they met and conferred in person. **The joint letter shall set out each issue in a separate section and include in that section each parties' position (with appropriate legal authority) and proposed compromise. (This process allows a side-by-side analysis of each disputed issue.)** If the disagreement concerns specific discovery that a party has propounded, such as interrogatories, requests for production of documents, or answers or objections to such discovery, the parties shall reproduce the question/request and the response in its entirety in the letter. The Court then will review the letter and determine whether future proceedings are necessary. In emergencies during discovery events such as depositions, the parties may contact the Court pursuant to Civil Local Rule 37-1(b).

The court understands the costs of in-person meetings, but so far, discovery in this case is not working all that well. The court will not require in-person meetings (yet) but urges the parties to try different processes (e.g., video conferencing as opposed to email wars) that might lead to a greater ability to resolve issues without the court's intervention. If the parties are unable to work out a new process, the court may order more routine in-person case management conferences that are preceded

by a several-hour opportunity to meet and confer in the court's jury room.

### III. CONCLUSION

This disposes of ECF Nos. 74 and 75.

**IT IS SO ORDERED.**

Dated: June 1, 2012

_____
LAUREL BEELER
United States Magistrate Judge