GALLO LLP
Ray E. Gallo (State Bar No. 158903)
rgallo@gallo-law.com
Dominic Valerian (State Bar No. 240001)
dvalerian@gallo-law.com
1101 5th Avenue, Suite 205
San Rafael, CA 94901
Phone: (415) 397-1205
Fax: (310) 338-1199

Attorneys for Plaintiffs Angelo Bottoni,  Paul
Roberts, Tracie Serrano, and Shawnee Silva, on
behalf of themselves and all others similarly situated.

THE UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| ANGELO BOTTONI; PAUL ROBERTS; TRACIE SERRANO; and SHAWNEE SILVA for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SALLIE MAE, INC.; and DOES 1 through 1,000, inclusive,<br><br>Defendants. | No. 3:10-cv-03602 LB<br><br>**DECLARATION OF DOMINIC VALERIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br>Hon. Laurel Beeler<br><br>Date:  August 1, 2013<br>Time: 9:30 a.m.<br>Courtroom C, 15th Floor |

**VALERIAN DECLARATION**
3:10-cv-03602-LB

I, Dominic Valerian, declare:

1.     I am a member in good standing of the California State Bar, and a partner in the law firm of Gallo LLP, which represented Plaintiffs and the Class in this action.  I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement.  I am one of the two primary attorneys at Gallo LLP on this case, and have been involved in every aspect of it from inception to the present.  Except where stated otherwise, I have personal knowledge of the matters set forth herein, and could and would competently testify thereto if called to do so.

**1.     Pre-filing Investigation and Correspondence**

2.     This matter came to the attention of our firm as a result of our efforts on behalf of plaintiffs and class members in *Allison Amador, et al. v. California Culinary Academy, Inc., et al.*, San Francisco Super. Ct., Case No. 467710, reporting high Sallie Mae, Inc. ("Sallie Mae") collection charges.  In January 2010, we began investigating Sallie Mae's collection cost practices by surveying, interviewing, and collecting relevant documents and information from affected borrowers.  Concurrent with this factual investigation, we researched and analyzed the legality of Sallie Mae's practices.

3.     Our investigation confirmed that Sallie Mae was assessing 25% collection charges on defaulted private loans, attempting to collect those charges, and reporting the charges on credit reports.  We concluded that these practices appeared to violate the terms of Sallie Mae's private loan promissory notes (the "Notes" or "Promissory Notes") and several California laws.  We shared the results of our investigation with two larger plaintiffs' class action firms to explore the possibility of co-counseling, but neither expressed serious interest in joining the case.

4.     We initiated pre-filing settlement discussions with Sallie Mae in late January 2010. These discussions did not resolve the dispute, so on April 16, 2010 I sent Sallie Mae a CLRA 30-Day Notice letter advising it that the Collection Cost Assessments violated the CLRA and seeking correction.  More than 30 days passed without a resolution or any meaningful response to my letter, so on July 13, 2010, Plaintiffs Bottoni, Roberts and Serrano filed this case as a putative

**VALERIAN DECLARATION**
3:10-cv-03602-LB

**Gallo LLP**
**1101 5th Avenue, Suite 205**
**San Rafael, CA 94901**

1    class action in San Francisco Superior Court.

2        5.    Sallie Mae claimed that it stopped assessing the Collection Cost Assessments as of

3    July 31, 2010, two weeks after the action was filed, but it continued to treat previously assessed

4    Collection Cost Assessments as due and owing and defended Plaintiffs' lawsuit.

5    **2.    Discovery**

6        6.    After Sallie Mae's challenges to the pleadings were resolved, the parties conducted

7    discovery.  Plaintiffs propounded upon Sallie Mae forty-five requests for production of

8    documents, thirty-nine written interrogatories, and thirty-six requests for admissions.  Plaintiffs

9    also obtained discovery from four of Sallie Mae's third party debt collectors through third party

10   subpoenas.  Sallie Mae and its debt collectors ultimately produced more than 20,000 pages of

11   responsive documents, which Plaintiffs' Counsel reviewed and analyzed.  In addition, we prepared

12   responses to the discovery requests Sallie Mae propounded, including twenty-eight requests for

13   production of documents to each Plaintiff, twenty five interrogatories to Plaintiff Bottoni and

14   eleven interrogatories to Plaintiffs Silva, Serrano, and Roberts. Plaintiffs' Counsel defended the

15   depositions of each of the four named plaintiffs.  We also retained two expert witnesses to assist in

16   evaluating their claims.

17       7.    We engaged in extensive meet and confer efforts regarding Sallie Mae's document

18   production and written discovery responses.  For much of the litigation we held, weekly (and

19   sometimes even more frequent) teleconferences with Sallie Mae's counsel regarding discovery

20   issues.  Most of these issues were resolved through the meet and confer process (sometimes only

21   after we sent Sallie Mae's counsel Plaintiffs' portion of a joint discovery letter), though several

22   others were not, requiring us to file six formal discovery dispute letters (ECF Nos. 54, 71, 74, 75,

23   97, 100, 109), which each resolved favorably.  (ECF Nos. 55, 73, 91, 99, 106).  We also filed two

24   motions to extend the discovery period, necessitated by Sallie Mae's vigorous opposition to our

25   discovery efforts.  (ECF Nos. 76, 118).

26       8.    Based on the above described discovery efforts and our independent investigation

27   of Plaintiffs' claims, I am informed and believe the facts set forth in paragraphs 9 through 22

28

**Gallo LLP**
**1101 5th Avenue, Suite 205**
**San Rafael, CA 94901**

**VALERIAN DECLARATION**
3:10-cv-03602-LB

1  below are true and correct.

2       9.     Sallie Mae's primary business is to originate, service, and collect educational loans.

3  Since July 2010, Sallie Mae has originated only Private Loans, meaning loans to students or their

4  families that are non-federal loans and loans not insured or guaranteed under the previously

5  existing Federal Family Education Loan Program.

6       10.    To obtain a Sallie Mae Private Loan, borrowers must sign a Promissory Note.

7  Sallie Mae produced 865 versions of different Promissory Notes that were in place from 2000-

8  2010, which our office has reviewed.

9       11.    The Promissory Notes Sallie Mae produced contain the following or a legally

10 equivalent provision about collection costs:

11      [Borrower] agree[s] to pay [holder] reasonable amounts permitted by law, including
        collection agency fees, attorneys' fees and court costs, which [holder] incurs in enforcing
12      the terms of this Note.

13      12.    Plaintiffs' Notes and the vast majority of the Notes Sallie Mae produced (but not all

14 of them) provide for application of the law of the lender's state.  The lender listed on Plaintiffs'

15 Notes is Stillwater National Bank, which is located in Oklahoma.  We believe the vast majority, if

16 not all, of the lenders listed on Class Members' Notes are located in states other than California,

17 where lending laws are more favorable to Sallie Mae.

18      13.    Most of the Notes Sallie Mae produced (but not Plaintiffs') contain arbitration

19 clauses that provide for individual arbitration and expressly waive the right to join or consolidate

20 claims or participate in a class action in court or arbitration as a class member or representative.

21 These appear readily-enforceable.

22      14.    Pursuant to Sallie Mae's written policies, if a private loan is delinquent for more

23 than 212 days, Sallie Mae declares the loan in default, charges-off the loan, reports the defaulted

24 balance to credit reporting agencies on a monthly basis, and "places" the loan with one of its many

25 third party debt collectors ("Collectors").  Pursuant to the Collectors' contracts with Sallie Mae,

26 the assigned Collector pursues collection of the entire outstanding balance as reported to it by

27 Sallie Mae by making a minimum number of telephone calls and sending a minimum number of

28

**VALERIAN DECLARATION**
3:10-cv-03602-LB

**Gallo LLP**
**1101 5th Avenue, Suite 205**
**San Rafael, CA 94901**

Gallo LLP
1101 5th Avenue, Suite 205
San Rafael, CA 94901

1   letters.  The Collectors are also authorized to compromise debts under Sallie Mae's settlement

2   guidelines.  Since 2006, Sallie Mae has used at least thirty different Collectors.

3          15.    Sallie Mae compensates the Collectors on a contingency basis at the rates in the

4   Collectors' contracts, which vary depending on such factors as the age of the debt, whether the

5   borrower made recent payments, and/or how many Collectors the loan has already been placed

6   with.  The rates generally range from 20% to 30%, though in some cases Sallie Mae pays its

7   Collectors less than 20%.

8          16.    In December 2002, Sallie Mae began assessing a collection charge on private loans

9   upon charge-off equal to a percentage of the defaulted loan's outstanding principal and interest

10  (the "Collection Cost Assessment").  The Collection Cost Assessment is 25% for most loans, but

11  is 20% for a small number of pre-1997 loan programs.  Based on memos reflecting the

12  development of the Collection Cost Assessment and the 20% to 30% contingency fees generally

13  charged by Sallie Mae's Collectors, we believe Sallie Mae designed the Collection Cost

14  Assessment to approximate the collection costs that it would incur if its Collectors collected 100%

15  of the balance at default for each individual defaulted loan.  Sallie Mae also allocates a portion of

16  each post-default payment toward the Collection Cost Assessment, limited to the same percent

17  assessed at charge-off.  For example, if a 25% Collection Cost Assessment is assessed at charge-

18  off, the portion of subsequent payments allocated to the Collection Cost Assessment is capped at

19  25% of each payment.  Sallie Mae includes the Collection Cost Assessment in the amount it

20  reports as due to its Collectors and credit reporting agencies on a monthly basis.  Sallie Mae also

21  pursues internal collection efforts before loans go into default, but Sallie Mae did not produce

22  evidence of the cost of these efforts and disputed their relevance.[1]

23         17.    Sallie Mae produced memoranda from the time the Collection Cost Assessment

24  was implemented, which we believe suggest Sallie Mae knew or should have known the

25  Collection Cost Assessment breached the terms of the Notes.

26  _____

27  [1] If anything, these costs would increase the collection costs that Sallie Mae can lawfully collect
from borrowers, so Plaintiffs have not pursued the issue.

28

18.     Sallie Mae produced data showing that as of January 31, 2012:

      a.    Between July 13, 2006 (four years before the action was filed) and July 13, 2010 (the day the action was filed), Sallie Mae assessed Collection Cost Assessments of $116,906,058 to 36,596 California private loan borrowers (including 28,184 borrowers and 8,577 cosigners).

      b.    Between July 13, 2006 and July 13, 2010, Sallie Mae allocated $7,733,819 collected from 13,385 California private loan borrowers (including 9,675 borrowers and 3,725 cosigners) to Collection Cost Assessments.

      c.    Between July 13, 2006 and July 13, 2010, Sallie Mae collected $573,658 in Collection Cost Assessments in excess of amounts that were otherwise due as principal, interest, or other fees.

19.     Based on our investigation to date, it appears the Collectors do not track their actual collection costs.  Sallie Mae, however, produced financial statements for 12 of its Collectors for 2010 and/or 2011.  Based on our review of these statements and expert input, we believe the Collectors' profit margins were generally in line with the collection industry averages of 6.73% in 2008 and 5.05% in 2010.[2]  Taking the contingency fees that Sallie Mae has paid and expects to pay its Collectors, adjusted by the Collectors' approximate profit margins, we believe we can establish the Collectors' actual costs with a reasonable degree of precision.

20.     As of the 3rd quarter 2011, Sallie Mae projected that it would recover 27% of charged-off private education loan debt over the life of the loans.  This expectation remained in place as of February 27, 2013.[3]  Plaintiffs have not obtained Sallie Mae's previous projected recovery rates for defaulted loans.

21.     As of November 19, 2012, the Class consisted of at least 40,245 borrowers and co-

Gallo LLP
1101 5th Avenue, Suite 205
San Rafael, CA 94901

---

[2] See Patrick Lunsford, *The Myth of the Debt Collection Boom*, Forbes.com (Feb. 23, 2012, 10:44 AM), http://www.forbes.com/sites/insidearm/2012/02/23/the-myth-of-the-debt-collection-boom/?feed=rss_home.
[3] See, e.g., SLM Investor Presentation Fourth-Quarter 2012 at 59, (February 27, 2013), https://www.salliemae.com/about/investors/webcasts/default.aspx.

**VALERIAN DECLARATION**
3:10-cv-03602-LB

Gallo LLP
1101 5th Avenue, Suite 205
San Rafael, CA 94901

1  borrowers according to a Class list Sallie Mae produced.  Since the Class consists of both the

2  36,596 Californians who were assessed a Collection Cost Assessment between July 13, 2006 and

3  July 10, 2010 and the other Californians who paid some portion of a Collection Cost Assessment

4  after July 13, 2006, that means at least 3,649 Californians whose loans charged-off before July 13,

5  2006 paid some portion of a Collection Cost Assessment after July 13, 2006 (40,245-36,596

6  =3,649).

7         22.    The size of the Class has grown since then as more California borrowers who

8  incurred the Collection Cost Assessment before the Class Period have paid a portion of the

9  Collection Cost Assessment during the Class Period.

10  **3.    Settlement Efforts**

11         23.    Concurrent with their litigation efforts, Plaintiffs' Counsel and counsel for Sallie

12  Mae have engaged in extensive, good faith, arm's length negotiations concerning the possible

13  settlement of the Action, including numerous letters emails, and in person and telephone

14  conversations.  These communications thoroughly analyzed the relevant law, facts, and the

15  litigation risks both sides face.

16         24.    On April 12, 2012 and November 30, 2012 the parties participated in full day

17  mediation sessions before the Honorable Layn R. Phillips (Ret.).  The parties submitted detailed

18  mediation statements to Judge Phillips before both sessions and exchanged them before the second

19  session.  At the November 30, 2012 mediation session, with the help of Judge Phillips, the parties

20  agreed on a term sheet reflecting the material terms of the Settlement.

21         25.    During the negotiation of the formal settlement agreement that followed the

22  mediation session, several unresolved issues emerged.  As a result, the parties continued to

23  negotiate the terms of the settlement over the following months, exchanging a series of

24  counterproposals on key aspects of the settlement, including the parameters of the monetary relief

25  for the Class.  These negotiations remained adversarial, non-collusive, and at arm's length.

26  Through these negotiations, the parties finalized the settlement on or about June 27, 2013.

27

28

**VALERIAN DECLARATION**
3:10-cv-03602-LB

**Gallo LLP**
**1101 5th Avenue, Suite 205**
**San Rafael, CA 94901**

1  **4.      Settlement Value**

2          26.      Under the terms of the Proposed Settlement, Class Members will generally face

3  collection costs that are 35% of those they were originally assessed.[4]

4          27.      Accordingly, Plaintiffs estimate the 36,596 Class Members whose loans were

5  charged-off between 7/13/06 and 7/13/10 will have their aggregate Collection Cost Assessments

6  reduced from $116,906,058 ($4,148 per Class Member on average[5]) to approximately

7  $40,917,120[6] ($1,451 per Class Member on average[7]).  This amounts to a roughly $75,988,938

8  reduction in Collection Cost Assessments[8] ($2,696 per Class Member on average[9]).

9          28.      This estimate is imperfect because any Class Members who were initially assessed

10  a 20% rather than 25% Collection Cost Assessment will receive less of a reduction.  But the

11  portion of loans subject to a 20% Collection Cost Assessment is limited to a small number of pre-

12  1997 loans and loans for one out of state school, so Plaintiffs do not expect this would have a

13  significant effect.  Moreover, 20% was a more reasonable (if not a reasonable) charge in the first

14  instance.

15          29.      The estimate is also imperfect because Class Members who settled without paying

16  the full amount of a Collection Cost Assessment will receive less of a reduction or no reduction.

17  Sallie Mae authorizes its Collectors to settle defaulted debts without express approval for varying

18  percentages of the outstanding principal and interest upon a determination the debtor is unable to

19  pay, and Sallie Mae can approve greater discounts.  Borrowers who settle their loans without

20  paying the full amount or any of the Collection Cost Assessment will receive less of a reduction or

21  no reduction in the Collection Cost Assessment under the Settlement.  Plaintiffs believe this

22

23  _____

[4] $8.75\% \div 25\% = 35\%$.

24  [5] $116,906,058 \div 28,184 = \$4,147.95$.  Average per-Class Member charges are obtained by dividing
aggregate charges by the number of borrowers only without including co-signers (28,184 rather

25  than 36,596) because co-signers are jointly liable for the borrowers' debt.
[6] 35% of $116,906,058 = $40,917,120.

26  [7] $40,917,120 \div 28,184 = \$1,451$.  *See* FN 5.
[8] $116,906,058 - $40,917,120 = $75,988,938.

27  [9] $75,988,938 \div 28,184 = \$2,696$.  *See* FN 5.

28

**VALERIAN DECLARATION**
3:10-cv-03602-LB

1   represents a relatively small portion of the group whose loans were charged-off between 7/13/06

2   and 7/13/10 because Sallie Mae apparently collected significantly less than 6.6% of this cohort's

3   defaulted balance as of January 31, 2012.[10]  In any event, Class Members who settled their loans

4   without paying any collection costs in excess of the adjusted 8.75% Collection Cost Assessment

5   (after taking into account write-offs) will receive $40 in place of a reduction in the Collection Cost

6   Assessment.

7       30.     At least 3,649 Class Members who defaulted before the Class Period but made a

8   payment during the Class Period will also have their Collection Cost Assessments reduced to

9   8.75%.  They are not included in the $75,988,938 estimate, which only includes the reduction for

10  the 36,596 Class Members who were assessed the Collection Cost Assessment during the Class

11  Period.

12      31.     Based on my experience, and taking into consideration the risks of continued

13  litigation (and likely appeals) versus the certain and substantial relief afforded by the Settlement, it

14  is my opinion that the Settlement is fair, adequate and reasonable, in the best interests of the Class,

15  falls within the range of reasonableness, and merits approval.

16  **5.    Role of Class Representatives**

17      32.     Each Plaintiff has: 1) been assessed a 25% Collection Cost Assessment, 2) been

18  subjected to professional collectors' efforts to collect the Collection Cost Assessments, and 3) had

19  the Collection Cost Assessments reported on their credit reports.  Plaintiffs Roberts and Silva have

20

21  [10] California borrowers were assessed $116,906,058 in collection costs between 7/13/06 and
    7/13/10, suggesting defaulted principal and interest of around $467 million based on Sallie Mae's

22  25% collection cost formula ($116,906,058÷.25=$467,624,232).  Plaintiffs infer Sallie Mae had
    collected significantly less than 6.6% of this amount as of January 31, 2012 because California

23  borrowers reportedly paid total collection costs of $7,733,819 between 7/13/06 and 1/31/12
    suggesting total payments of around $31 million based on Sallie Mae's 25% allocation formula

24  ($7,733,819÷.25=$30,935,276).  $31 million is around 6.6% of $467 million
    ($30,935,276÷$467,624,232=6.62%), but the actual percentage of defaulted principal and interest

25  collected from borrowers whose loans were charged off between 7/13/06 and 7/13/10 is below

26  6.6% because the $31 million in Collection Cost Assessments was collected from all California
    borrowers whose loans were charged-off after the Collection Cost Assessment was implemented

27  in 2002—not just those whose loans were charged-off between 7/13/06 and 7/13/10.

28

**VALERIAN DECLARATION**
3:10-cv-03602-LB

Gallo LLP
1101 5th Avenue, Suite 205
San Rafael, CA 94901

1   paid portions of their Collection Cost Assessments while Plaintiffs Bottoni and Serrano have not.

2   To the best of my knowledge, there are no conflicts of interest between the class representatives

3   and other Class Members and all want to maximize the recovery for the class.

4        33.    Plaintiffs' counsel represented Plaintiffs and nearly 1,000 Class Members as class

5   members in *Allison Amador, et al. v. California Culinary Academy, Inc., et al.*, San Francisco

6   Super. Ct., Case No. CGC-07-467710, filed September 27, 2007, judgment entered April 19,

7   2012, and subsequently represented Plaintiffs Roberts and Bottoni in *Karina Abarca, et al. v.*

8   *California Culinary Academy, Inc., et al.*, San Francisco Super. Ct., Case No CGC-11-511469,

9   filed June 3, 2011.  Besides that representation and this matter, Plaintiffs' have no personal or

10  business relationships with their counsel.  Plaintiffs have been deposed and responded to

11  discovery requests and no significant shortcomings unique to Plaintiffs have emerged.

12       34.    Each class representative spent more than 25 hours on this care for which they have

13  not received any compensation.  They all kept abreast of the litigation, were deposed, compiled

14  documents and answered interrogatories in response to discovery requests, and regularly

15  corresponded with counsel telephonically and by email.  Throughout the three years their claims

16  have been pending, they have diligently represented the interests of the Class.  Each took the

17  substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other

18  side's costs.

19  **6.    Plaintiffs' Counsel's Qualifications and Experience**

20       35.    <u>Ray Gallo.</u> Mr. Gallo graduated from Yale College with a B.A. in Economics and

21  Political Science in May of 1987 and received his J.D. from the University of California, Los

22  Angeles School of Law in December 1991.  He joined the Los Angeles office of Crosby, Heafey,

23  Roach & May (now Reed Smith) in February 1992.  After two years at Crosby, he left to start Gallo &

24  Associates (now Gallo LLP).  In or about 1998, as only a sixth year lawyer, Mr. Gallo received

25  Martindale Hubbell's "AV" rating.  Mr. Gallo has been actively involved in the prosecution of

26  consumer fraud class actions since 2004 and has been approved and appointed as Class Counsel

27  multiple times by the California Superior Court and has obtained final approval of class

28

Gallo LLP
1101 5th Avenue, Suite 205
San Rafael, CA 94901

**VALERIAN DECLARATION**
3:10-cv-03602-LB

settlements in the following consumer class action cases:

- *Meier v. Rubios,* Los Angeles Super. Ct., Case No. BC 335793, filed June 28, 2005, final approval granted in 2006.

- *Sutton v. Pinkberry,* Los Angeles Super. Ct., Case No. BC 370909, filed May 10, 2007, final approval granted in 2008.

- *Bienstock v. Ventura Foods,* Los Angeles Super. Ct., Case No. BC 362937, filed December 5, 2006, final approval granted in 2008.

- *Amador v. California Culinary Academy, Inc., et al.*, San Francisco Super. Ct., Case No. CGC-07-467710, filed September 27, 2007, final approval granted in 2012. (This $40 million class settlement was identified on multiple lists as one of the largest and most significant class settlements of 2011, and was a pioneering step in the fight against deceptive practices by for-profit vocational schools.)

Mr. Gallo is currently co-counsel for plaintiffs in *Vasquez, et al. v. California School of Culinary Arts, Inc.*, Los Angeles Super. Ct., Case No. BC 393129, a consumer mass action on behalf of more than 1,000 plaintiffs, and co-counsel for defendant in a consumer class action entitled *Daniels v. Compex Legal Servs.*, Los Angeles Super. Ct., Case No. BC485087.

36.   <u>Dominic Valerian.</u>  I majored in political science at the University of California, Davis, where I graduated with honors in 2002.  I graduated from the University Of Southern California Gould School of Law in 2005 and was admitted to the California Bar that year.  From 2005 to 2009 I worked as a litigation associate at the Los Angeles office of Dewey & LeBoeuf, where I primarily litigated complex commercial cases.  I also participated in the defense of a series of consumer class action cases alleging violations of the Song-Beverly Credit Card Act against a retailer.  In 2009 I joined Gallo LLP, where my practice has focused primarily on litigating consumer class and mass actions, including the *Amador*, *Vasquez*, and *Daniels* cases referenced above.

**7.   Exhibits**

37.   Attached hereto as Exhibit 1 is a true and correct copy of the parties' fully executed

Gallo LLP
1101 5th Avenue, Suite 205
San Rafael, CA 94901

1   Settlement Agreement.

2        38.    Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of the

3   Hon. Layn R. Phillips (Ret.).

4        39.    Attached hereto as Exhibit 3 is a true and correct copy of Operation Hope's

5   description of its history and mission from its webpage at http://www.operationhope.org/aboutus.

6

7   I declare under penalty of perjury under the laws of the United States that the foregoing is true and

8   correct.

9        Executed on July 11, 2013 at San Rafael, California.

10

11                          *Dominic Valerian*

12                          Dominic Valerian

**Gallo LLP**
**1101 5th Avenue, Suite 205**
**San Rafael, CA 94901**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement" or "Settlement") is entered into by and between Angelo Bottoni, Tracie Serrano, Shawnee Silva, and Paul Roberts (together, "Plaintiffs" or "Class Representatives"), for themselves and the Settlement Class (as defined herein), on the one hand, and Sallie Mae, Inc. ("Sallie Mae" or "Defendant"), on the other hand, in the action titled *Bottoni, et al. v. Sallie Mae, Inc.*, pending in the United States District Court for the Northern District of California (the "Court"), Case No. C 10-03602 LB (the "Action").

### I.   RECITALS

The following recitals are material terms of this Agreement, and all capitalized terms are used as defined herein. This Agreement is made with reference to and in contemplation of the following mutually acknowledged facts and circumstances:

A.   Plaintiffs are all former students at the California Culinary Academy ("CCA") who took out private education loans serviced by Sallie Mae, Inc. ("Sallie Mae") to finance their educations. Each of the plaintiffs signed promissory note(s), which provided that, upon default, they agreed to pay reasonable "collection costs" and/or "collection agency fees" incurred by Sallie Mae in enforcing the terms of the notes. When each plaintiff defaulted, Sallie Mae charged off the loan and placed it with one of various third-party collection agencies. At the time of charge-off, Sallie Mae assessed a Collection Cost Assessment (generally 25% of the unpaid balance), generally reflecting the contingency fees charged to Sallie Mae by those collection agencies on amounts collected.

B.   Plaintiffs filed this putative class action lawsuit against Sallie Mae and SLM Corporation (Sallie Mae's parent corporation) on July 13, 2010, in the Superior Court of the State of California, in and for the County of San Francisco, alleging that Sallie Mae's assessment of a 25% Collection Cost Assessment upon their defaulted private education loans was an

Exhibit 1    page 1 of 49

impermissible liquidated damages provision under California law and/or breached the terms of their promissory notes. Plaintiffs asserted claims for breach of contract, violations of Cal. Civ. Code §1671 (liquidated damages), the Consumer Legal Remedies Act, and the California Unfair Competition Law, and sought declaratory relief. Sallie Mae removed the complaint to the United States District Court for the Northern District of California (Dkt. 1) and immediately filed a motion to dismiss (Dkt. 6). In response, Plaintiffs filed a First Amended Complaint that omitted SLM Corporation as a defendant but added new claims for alleged violations of the Rosenthal Fair Debt Collection Practices Act and the California Consumer Credit Reporting Agencies Act. (Dkt. 19). Sallie Mae renewed its motion to dismiss (Dkt. 28) and, on February 11, 2011, the Court granted the motion in part (with leave to amend) and denied it in part. (Dkt. 35). Plaintiffs then filed a Second Amended Complaint (Dkt. 37) and Sallie Mae again responded with a motion to dismiss. (Dkt. 42). On June 8, 2011, the Court granted the motion in part (this time without leave to amend) and denied it in part (Dkt. 50), leaving the operative claims as follows: violation of Cal.Civ.Code §1671(b) (liquidated damages) (Count I); unfair competition (Count III); breach of contract (Count IV); declaratory relief (Count V); Rosenthal Fair Debt Collection Practices Act (Count VI); and California Consumer Credit Reporting Agencies Act (Count VII). Sallie Mae thereafter filed its answer to the Second Amended Complaint on June 22, 2011, denying all liability. (Dkt. 52).

       C.      Defendant vigorously denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability and denies all material allegations of the Second Amended Complaint. Defendant desires to settle the Action on the terms set forth herein solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing this litigation.

       D.      Plaintiffs have engaged in substantial discovery to evaluate the merits of their

Exhibit 1    page 2 of 49

claims and of Sallie Mae's defenses, and also to determine whether their claims are appropriate for class treatment. Plaintiffs have investigated to their satisfaction various facts and sufficiently analyzed the legal issues surrounding the Released Claims (as defined herein), including through extensive written discovery and document production. The named plaintiffs' depositions have also been taken.

E.      Class Counsel (as defined below) and counsel for Sallie Mae have engaged in extensive, good faith, arm's length negotiations concerning the possible settlement of the Action, including participating in two days of mediation before The Honorable Layn R. Phillips (Ret.) on April 12, 2012 and November 30, 2012. The parties provided detailed mediation submissions to Judge Phillips, setting forth their respective views as to the strengths of their claims and defenses. All of these efforts assisted the parties in reaching the Settlement, as set forth in this Agreement.

F.      Based on the investigation and negotiation described above, Class Counsel have taken into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of the Action, and the substantial benefits to be provided pursuant to this Agreement, and concluded that a settlement with the Released Parties (as defined herein) on the terms set forth in the Agreement is fair, reasonable, adequate and in the best interests of the Settlement Class.

G.      The parties understand, acknowledge and agree that the execution of this Agreement constitutes a Settlement and compromise of disputed claims. This Agreement is inadmissible as evidence against any party except to enforce the terms of the Settlement and is not an admission by Defendant of any wrongdoing or liability, or by Plaintiffs of the merit of any defense or the lack of merit to any claim. It is the parties' desire and intention to effect a full and

Exhibit 1    page 3 of 49

final settlement and resolution of all existing disputes and claims as set forth herein.

H.      The Settlement contemplated by this Agreement is expressly conditioned upon and subject to preliminary and final approval by the Court, as set forth herein. Absent such approvals, this agreement shall be null, void, and of no further force or effect and the parties shall be returned to their *status quo ante*. Effective upon such approvals, this Agreement is intended by the parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

I.      The parties agree that the Action was resolved in good faith, following arm's length bargaining presided over by a neutral and highly experienced mediator, and that the Settlement reflected herein confers substantial benefits upon the parties and the Settlement Class.


II.     <u>DEFINITIONS</u>

A.      "Class Counsel" means Ray E. Gallo and Dominic Valerian of the law firm of Gallo LLP.

B.      "Class Notice" means the "Notice of Settlement of Class Action," substantially in the form of Exhibit A hereto (but subject to such changes, if any, as the Court may direct).

C.      "Collection Cost Assessment" means that amount (generally 25% of the outstanding balance) assessed by Sallie Mae upon charge-off on a private education loan serviced by Sallie Mae.

D.       "Defendant's Counsel" means David. L. Hartsell and Tammy L. Adkins of the law firm of McGuireWoods LLP.

E.      "Effective Date" means ten (10) days following the date on which all of the following have occurred:

1.      the Court enters a Preliminary Approval Order, as defined below,

Exhibit 1    page 4 of 49

substantially in the form of Exhibit B hereto (but subject to such changes, if any, as the Court may determine are required to ensure compliance with applicable law);

      2.      the Court enters a Final Approval Order and Judgment, as defined below, substantially in the form of Exhibit C hereto (but subject to such changes, if any, as the Court may determine are required to ensure compliance with applicable law); and

      3.      the Court's Judgment entered on the Settlement becomes Final, as defined below.

      F.      "Final," with respect to the Judgment, means the later of: (1) the day following the date on which the Final Approval Order and Judgment is no longer subject to review by appeal or otherwise, if no notice of appeal or similar motion or notice has been filed; or (2) if any such notices or motions are filed, on the day following the date when the Final Approval Order and Judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has not become and is no longer subject to the possibility of further appeal or review.

      G.      "Final Approval Hearing" means the hearing at or after which the Court will decide whether to approve the Settlement set forth in this Agreement as fair, reasonable and adequate.

      H.      "Final Approval Order and Judgment" means the order and judgment to be entered by the Court finally approving the Settlement and dismissing the Action, which shall be substantially in the form of Exhibit C hereto (but subject to such changes, if any, as the Court may determine are required to ensure compliance with applicable law).

      I.      "Plaintiffs" or "Class Representatives" means Angelo Bottoni, Tracie Serrano, Shawnee Silva, and Paul Roberts.

Exhibit 1    page 5 of 49

J.      "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the proposed Settlement as fair, adequate, and reasonable and approving the form and manner of notice to Settlement Class Members, which shall be substantially in the form of Exhibit B hereto (but subject to such changes, if any, as the Court may determine are appropriate to ensure compliance with applicable law).

K.      "Released Claims" is defined in Section III.K.

L.      "Released Parties" is defined in Section III.K.

M.      "Settlement Administrator" means Kurtzman Carson Consultants, subject to approval by the Court.

N.      "Settlement Class" means all persons in California[1] who, within the period from July 13, 2006 through May 31, 2013 (the "Class Period"), were assessed and/or paid a Collection Cost Assessment in connection with a private education loan serviced by Sallie Mae, as identified in the class list to be generated by Sallie Mae from its records using its best efforts (the "Class List"). Sallie Mae shall file the Class List under seal to protect the privacy of the Class Members, and simultaneously shall provide it to Class Counsel and the Settlement Administrator, in a mutually acceptable format, not later than seven (7) days following the Court's entry of an order preliminarily approving the settlement. Sallie Mae shall mark/designate the Class List as confidential pursuant to the terms of the Protective Order entered in this Action. Any member of the Settlement Class who is omitted from the Class List shall not be a member of the Settlement Class for any purpose.

---

[1] Persons shall be deemed to be "in California" if: 1) they were assessed a Collection Cost Assessment during the Class Period while residing in California, or 2) they were a California resident at the end of any month during the Class Period in which any payment was applied to their Collection Cost Assessment.

Exhibit 1    page 6 of 49

### III.    TERMS OF SETTLEMENT

A.    <u>Conditional Certification Of Settlement Class</u>. Sallie Mae disputes that a class would be manageable and further denies that a litigation class properly could be certified on the claims asserted in the Action. However, solely for purposes of avoiding the expense and inconvenience of further litigation, Sallie Mae does not oppose the conditional certification of the Settlement Class for settlement purposes only. Conditional certification of the Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, and Sallie Mae shall not be precluded from challenging and reserves the right to challenge class certification in further proceedings in the Action or in any other action if the Settlement is not finalized or finally approved. If the Settlement is terminated or is not finally approved by the Court for any reason whatsoever, the conditional certification of the Settlement Class will be void, no doctrine of waiver, estoppel or preclusion will be asserted in any certification proceedings in the Action, this Agreement shall have no further force or effect, and the parties (and each and all of them) shall be returned to their *status quo ante* (as of November 29, 2012). No agreements made by or entered into by Sallie Mae in connection with the Settlement may be used by Plaintiffs, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any certification proceedings, whether in the Action or any other judicial proceeding. Similarly, nothing in this Agreement shall be construed as an admission by Plaintiffs, or any of them, that this settlement represents the result they would obtain if the matter were fully litigated.

B.    <u>Settlement Consideration</u>. Pursuant to this Agreement, as full and complete consideration for the Settlement and in exchange for the releases set forth below, Sallie Mae agrees as follows:

Exhibit 1    page 7 of 49

1.     <u>Monetary Consideration</u>. Sallie Mae agrees to adjust the Collection Cost Assessment (as defined above) to 8.75% for each of the Settlement Class Members' private education loans that are covered by this Settlement, said adjustment to be applied retroactively and prospectively and to remain in effect for the duration of said loans, and to implement said adjustment as follows:

(a)     For each of the Settlement Class Members' private education loans with an outstanding balance:

(i) The Collection Cost Assessment shall be adjusted to 8.75%.

(ii) Any and all amounts previously allocated toward collection costs in excess of 8.75% of post charge-off payments shall be reallocated to principal, interest or other fees in accordance with the terms of the promissory notes; in any case where this reallocation satisfies the outstanding loan balance and results in a credit to the borrower, Sallie Mae shall issue a refund in the amount of that credit.

(iii) Prospectively, no more than 8.75% of any and all future payments shall be allocated toward collection costs.

(b)     For each of the Settlement Class Members' private education loans that have been paid or settled in full:

(i) The Collection Cost Assessment shall be adjusted to 8.75%.

(ii) Where the amount of collection costs paid in excess of the adjusted 8.75% Collection Cost Assessment <u>exceeds</u> the amount that Sallie Mae wrote off in principal, interest and other fees (excluding collection costs), Sallie Mae shall refund the difference.

Exhibit 1    page 8 of 49

(iii) Where the amount of collection costs paid in excess of the adjusted 8.75% Collection Cost Assessment is less than the amount that Sallie Mae wrote off in principal, interest and other fees (excluding collection costs), Sallie Mae shall refund the sum of forty dollars ($40).

(c)     All refund payments due under Subparts (a) and (b) above shall be made by check payable to the borrower, except that in the case of loans that have a co-borrower(s) or co-signer(s), payment shall be made by check payable jointly to the borrower and co-borrower(s) or co-signer(s). In the event that one of the payees is deceased, the Settlement Administrator shall, upon receiving satisfactory proof of death, reissue the check to the surviving payee(s) or as otherwise determined by the Administrator to be proper (*e.g.*, to an heir). In the event that one of the payees is missing, the Settlement Administrator shall attempt to contact the missing payee(s) at their last known address, email address or telephone number and, if no response is received within 30 days, may reissue the check to the remaining payee(s).

(d)     All refund checks not cashed within one hundred eighty (180) days of issuance shall be allocated as *Cy Pres* to Operation HOPE, www.operationhope.org, within thirty (30) days, to provide services in California. Notwithstanding the foregoing, any Settlement Class Member upon request to the Settlement Administrator shall be entitled to have a settlement check re-issued at any time for good cause (as determined in the reasonable discretion of the Settlement Administrator) before that Settlement Class Member's payment is paid to Operation HOPE.

2.     Prospective Relief Consideration. Sallie Mae represents that as of July 31, 2010, it discontinued assessing collection costs entirely nationwide on newly charged-off private education loans serviced by Sallie Mae. Sallie Mae agrees that it will maintain that

Exhibit 1    page 9 of 49

practice for a period of time up to and including July 1, 2013.

C.      Attorneys' Fees, Costs, and Incentive Awards.

Sallie Mae agrees not to oppose an application for attorneys' fees in an amount not to exceed $1,200,000, and an amount of costs actually incurred, supported by documentation, not to exceed $50,000. Sallie Mae further agrees not to oppose an application for incentive awards to Plaintiffs, in an amount not to exceed $5,000 each. It is understood by all parties, however, that any fee, costs, and/or incentive award remains within the sole discretion of the Court, and whatever determination is made in that regard does not give rise to any grounds for rescinding or renegotiating this Settlement. The Settlement shall not in any way be contingent upon the Court awarding the full amounts requested as incentive awards or attorneys' fees and expenses. The parties did not negotiate, in the mediation or otherwise, attorneys' fees and expenses for Class Counsel nor incentive awards for Plaintiffs until after the parties had negotiated the consideration and benefits to the Settlement Class and the other material terms of the Settlement.

D.      Preliminary Approval. Plaintiffs will move the Court for entry of an order granting Preliminary Approval of the Settlement within 21 days of execution of this Agreement, which order shall specifically include provisions that, for settlement purposes only: (1) preliminarily approve the Settlement reflected herein as fair, adequate and reasonable, and within the reasonable range of possible final approval; (2) conditionally certify the Settlement Class; (3) provisionally appoint Class Counsel as counsel for the Settlement Class; (4) appoint Angelo Bottoni, Tracie Serrano, Shawnee Silva, and Paul Roberts as Class Representatives; (5) approve the proposed form and manner of Class Notice (subject to such changes as the Court deems appropriate to ensure compliance with applicable law) and find that the notice procedure set forth herein constitutes the best notice practicable under the circumstances, is due and sufficient notice

Exhibit 1    page 10 of 49

to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (6) approve and appoint Kurtzman Carson Consultants, LLC as the Settlement Administrator; (7) direct that Class Notice be given, in accordance with the Settlement, within 21 days following entry of the Preliminary Approval Order; (8) order the procedure set forth below for Settlement Class Members to object to the Settlement (subject to such changes as the Court deems appropriate to ensure compliance with applicable law) and set a date after which no one may object to the Settlement or intervene in the Action; (9) pending final determination of whether the Settlement should be finally approved, bar all Settlement Class Members, either directly, on a representative basis, or in any other capacity from commencing or prosecuting against any of the Released Parties any action, arbitration or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims; (10) pending final determination of whether the Settlement should be finally approved, stay all proceedings in the Action except those related to the effectuation of the Settlement; and (11) schedule a Final Approval Hearing and briefing schedule. Notwithstanding the foregoing, the Court may make such alterations to the form of the Preliminary Approval Order, Notice, and Notice procedure as are deemed appropriate by the Court to ensure compliance with applicable law.

      E.     <u>Class Notice</u>. Sallie Mae will cause Class Notice, substantially in the form of Exhibit A attached to this Agreement but subject to such revisions as the Court deems warranted, if any, to be provided to the Settlement Class Members through the Settlement Administrator, within 21 days following entry of the Preliminary Approval Order, using the best notice practicable, which—subject to the Court's approval and such alternative means as the Court may determine—the Parties agree shall be by electronic mail, to the extent Sallie Mae has a valid email address for the Settlement Class Member, and otherwise by U.S. Mail, to be sent to the last

Exhibit 1    page 11 of 49

known addresses of the Settlement Class Member, according to Sallie Mae's records. All costs associated with the provision of Class Notice and costs of administration will be paid by Sallie Mae. The Settlement Administrator shall establish and maintain a website dedicated to the Settlement on which the Class Notice, answers to Frequently Asked Questions, and certain case documents, including the Second Amended Complaint, this Settlement Agreement, and Plaintiffs' Motion for Preliminary Approval, shall be posted. The Settlement Website shall provide a means to submit online requests to be excluded from the class. Class Counsel shall also provide phone support to answer Class Members' questions about the settlement.

F.    <u>Objections To The Settlement</u>. Any Settlement Class Member may object on his or her own or through attorneys hired at his or her own expense. Objections to the Settlement must be in writing, including an explanation of why the Settlement should not be approved as fair, reasonable and adequate, or why attorneys' fees and expenses to Class Counsel or incentive awards to class representatives should not be awarded in the amounts requested. Any Settlement Class Member who wishes to object to any aspect of the Settlement must file written objection(s) with the United States District Court for the Northern District of California, San Francisco, and serve the same on Class Counsel and on Sallie Mae's Counsel. Objections must be filed no later than forty-five (45) days after the date the Class Notice is sent. The written objections(s) must include: (a) a detailed statement of the Settlement Class Member's objection(s) as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention in support of his/her objection(s); (b) the Settlement Class Member's name, address and telephone number; (c) any other supporting papers, materials or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection(s); (d) information sufficient to identify and establish the

Exhibit 1    page 12 of 49

individual objecting as a member of the Settlement Class; and (e) a statement of whether the objector or his or her lawyer will appear at the Final Approval Hearing to talk about his or her objections. If a Settlement Class Member hires an attorney to represent him or her, the attorney must file a notice of appearance with the clerk of court no later than forty-five (45) days after Class Notice is sent, or as the Court otherwise may direct.

       G.      <u>Requests for Exclusion From Settlement Class</u>.

          1.      <u>Requests For Exclusion</u>. Members of the Settlement Class shall be given the opportunity to exclude themselves from the Settlement Class. All requests to be excluded from the Settlement Class must be in writing and mailed to the Settlement Administrator or, alternatively, submitted on-line via the Settlement Administrator's website. To be effective, a written request for exclusion must be signed by the member of the Settlement Class, postmarked no later than forty-five (45) days after the date that Class Notice is sent, and must, as determined in the discretion of the Settlement Administrator, substantially include the following: (i) the Settlement Class Member's name, address, telephone number; (ii) a sentence confirming that he or she is a member of the Settlement Class; and (iii) the following statement (or other words expressing unambiguous desire to be excluded, as determined by the Settlement Administrator ): "I request to be excluded from the Settlement Class in Bottoni v. Sallie Mae, Inc." Alternatively, a Settlement Class Member may request exclusion no later than forty-five (45) days after the date that Class Notice is sent by following the exclusion procedures set forth on the Settlement Administrator's website for this Settlement. Without the written authorization of the Settlement Class Member, no person other than the Settlement Class Member may exclude that Settlement Class Member from the Settlement Class.

          2.      <u>Delivery To Parties/Filing With District Court</u>. The Settlement

Administrator shall provide electronic copies of the original requests for exclusion to the Parties no later than fifteen (15) days after the exclusion request deadline, and shall maintain the original exclusion requests. The Settlement Administrator shall likewise maintain and provide to all Counsel copies of all requests for exclusion that have been rejected, if any. Not later than ten (10) days before the Fairness Hearing, Plaintiffs shall file with the District Court a declaration from the Settlement Administrator that identifies all Settlement Class Members for whom it timely received valid exclusion requests. All Parties reserve the right to challenge the Settlement Administrator's decision to reject any exclusion request, in which case such exclusion request may be presented to the Court for determination at the Fairness Hearing.

        3.      <u>Effect</u>. All members of the Settlement Class who timely and properly exclude themselves from the Settlement Class will not be eligible to receive any payment or other relief pursuant to the settlement, and will not be bound by this agreement or any judgment entered on it or by any further orders or judgments in the Action otherwise affecting the Settlement Class.

        H.      <u>Termination by Sallie Mae.</u> If more than 5% of members of the Settlement Class request exclusion from the Settlement Class then, within ten (10) days after receipt of the copies of the requests for exclusion from the Settlement Class, Sallie Mae may elect to terminate this Settlement Agreement, at its sole discretion.

        I.      <u>Final Approval</u>. Plaintiffs will timely move the Court for entry of the Final Approval Order and Judgment and for awards of attorneys' fees and costs to Class Counsel and for incentive awards to Plaintiffs. The Final Approval Order and Judgment will specifically include, without limitation, provisions that: (1) finally approve the Settlement as fair, reasonable and adequate and in the best interests of the Settlement Class; (2) find that the Class Notice as

given was the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (3) finally certify the Settlement Class; (4) confirm the appointment of Class Counsel as counsel to the Settlement Class and the appointment of each of the Plaintiffs as the Class Representatives; (5) award such attorneys' fees and costs to Class Counsel and such incentive awards to Plaintiffs as the Court determines are appropriate; (6) confirm that Plaintiffs and the Settlement Class Members have released all Released Claims and are permanently barred and enjoined from commencing, asserting, prosecuting or continuing any of the Released Claims against the Released Parties; and (7) dismiss the Action with prejudice to give effect to the agreed releases contained in Section III.K, below, subject to retention of jurisdiction over the enforcement of the terms of this Agreement. Notwithstanding the foregoing, the Court may make such alterations to the Final Approval Order and Judgment as are determined by the Court to be appropriate to ensure compliance with applicable law.

J.      Distribution. All awards of attorneys' fees and costs to Class Counsel and incentive awards to Plaintiffs shall be paid within five (5) days of the Effective Date. All Settlement Consideration set forth in Section III.B.1 above shall be effectuated no later than seventy-five (75) days after the Effective Date. Within fifty (50) days of the Effective Date, Sallie Mae shall calculate the Settlement Consideration for each Class Member and adjust the Class Member's accounts accordingly. Sallie Mae shall, in effectuating the Settlement, provide to Class Counsel and the Administrator a spreadsheet or database reflecting the adjustments and distributions to be made pursuant to Section III.B.1. Sallie Mae shall pay over to the Settlement Administrator, no later than sixty (60) days after the Effective Date, all refund sums required by Section III.B.1.(a)-(b), which shall be distributed by the Settlement Administrator within

Exhibit 1    page 15 of 49

seventy-five (75) days of the Effective Date. Thereafter, Sallie Mae shall file with the Court a declaration under penalty of perjury certifying that the adjustments and distributions were made pursuant to the requirements of this Settlement and are as accurate as is practicable.

      K.    <u>Releases</u>. Upon the occurrence of the Effective Date, releases will be provided by Plaintiffs and each of the Settlement Class Members who have not timely excluded themselves, as follows:

> Plaintiffs and each Settlement Class Member, on behalf of themselves and each of their respective past, present and future heirs, executors, administrators, trustees, custodians, representatives, agents, attorneys, insurers and assigns, and any person or entity acting on their behalf, by operation of the Judgment, will be deemed to have fully and finally released and forever discharged Sallie Mae, Inc., its parent company SLM Corporation, and each and all of their respective present, former and future direct and indirect parent companies, affiliates, subsidiaries, agents, successors, and predecessors-in-interest and all of the aforementioneds' prior, current and future respective officers, directors, employees, attorneys, shareholders, agents, independent contractors, vendors, and assigns (collectively, the "Released Parties"), from any and all demands, claims, causes of action, counterclaims, affirmative defenses, duties, obligations or liabilities for injunctive and declaratory relief, whether arising under local, state or federal law, Constitution, statute, contract, law, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling) or case law, whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, foreseen or unforeseen, actual or contingent, that have been, or could have been, asserted by Plaintiffs and the Settlement Class (whether or not the Class Member objects to the Settlement), or their agents, representatives, successors or assigns, in the Action or any other proceeding or forum, arising out of the allegations in the Second Amended Complaint (collectively, the "Released Claims").

      1.    Without limiting the foregoing, the Released Claims specifically extend to claims arising from Sallie Mae's Collection Cost Assessment on the Settlement Class Members' private education loans serviced by Sallie Mae that Plaintiffs and Settlement Class Members do not know or suspect to exist in their favor at the time that the Settlement, and the releases contained herein, become effective. This paragraph constitutes a waiver of, without limitation as to any other applicable law, Section 1542 of the California Civil Code, which

Exhibit 1    page 16 of 49

provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

       2.       Plaintiffs and Settlement Class Members understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and any other applicable federal or state statute, case law, rule or regulation relating to limitations on releases.

       L.       <u>Stay/Bar Of Other Proceedings</u>. All proceedings in the Action will be stayed following entry of the Preliminary Approval Order, except as may be necessary or incident to pursuing approval or implementing the Settlement or complying with the terms of the Settlement. Pending determination of whether the Settlement should be granted final approval, the parties agree not to pursue any claims or defenses otherwise available to them, and no Settlement Class Member, either directly, on a representative basis or in any other capacity, shall be permitted to commence or prosecute against any of the Released Parties any action or proceeding asserting any of the Released Claims, provided that a Settlement Class Member may cease to be a Settlement Class Member by timely requesting exclusion from the Settlement Class. To effectuate the foregoing, the proposed Preliminary Approval Order will contain an injunction enjoining the commencement or prosecution of Released Claims by Settlement Class Members or persons purporting to act on their behalf pending final approval of the Settlement.

       M.       <u>Termination/Failure To Secure Approval</u>. In the event that the Settlement is not approved by the Court, or fails to become effective for any reason, the parties shall be returned to their respective positions in the Action as of November 29, 2012, before the Parties executed their Term Sheet that lead to this Settlement, as if no Settlement had been negotiated or entered into. In such event, the terms and provisions of this Agreement and any documents relating to it

Exhibit 1   page 17 of 49

shall have no further force and effect with respect to the parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

N.    <u>Compliance with Protective Order</u>. The Parties agree that nothing in this Settlement Agreement, the entry of the Preliminary Approval Order, or the entry of the Final Approval Order and Judgment shall be deemed to override or supersede the Parties' obligations as set forth in the Stipulated Protective Order in this Case.

O.    <u>Publicity and Non-Defamation</u>. Neither the Parties nor their Counsel will issue a press release, hold a press conference, or otherwise seek to publicize the case or the terms of the Settlement beyond what is required to effectuate the Settlement; and, further, the Parties and their Counsel will respond to third-party enquiries solely by reference to the public record. The named Plaintiffs and their Counsel on the one hand, and Defendant and its counsel on the other hand, each shall further refrain from intentionally defaming the other (or any of them) in all respects relating to or arising out of the subject matter of the Action. Nothing in this paragraph "O" shall: (1) limit the Parties' communications to the Court, which shall be governed by their applicable legal and ethical duties; (2) prohibit any communications required by law, including but not limited to the securities laws; (3) prohibit Class Counsel from communicating with any Settlement Class Member, or person seeking admission to the Settlement Class, regarding the Action or the Settlement; provided, however, that the Parties and their Counsel comply with the Stipulated Protective Order in the Action in communicating with such persons; (4) prohibit Class Counsel, following the entry of a Final Approval Order and Judgment, from identifying the case on a resume, curriculum vitae, or firm website; or (5) prohibit Class Counsel from responding to government inquiries.

Exhibit 1    page 18 of 49

P.    <u>General Matters</u>.

1.    <u>Future Changes In Laws Or Regulations</u>. To the extent Congress or any other relevant regulatory authority promulgates any law or regulatory promulgation that requires acts or omission that are inconsistent with the Settlement, those laws and regulatory provisions shall control.

2.    <u>No Admission Of Liability</u>. It is expressly declared that the Released Parties deny all allegations of wrongdoing and liability and are settling solely to avoid the burden, expense, risk, and uncertainty of litigation.

3.    <u>Settlement Communications</u>. Any pleadings submitted or statements made by the Parties in furtherance of the Settlement reflected in this Agreement are settlement communications subject to Federal Rule of Evidence 408. In the event final approval of the Agreement cannot be achieved, the parties agree that nothing contained in the Agreement, any subsequent writings intended to implement the Agreement, or any pleadings or oral or written statements submitted or made by the parties in negotiations regarding, pursuant to, or in furtherance of the Agreement, may be used, quoted, referenced, or admitted in any litigation or proceeding that is unrelated to the consummation or approval of the Agreement.

4.    <u>Evidentiary Preclusion</u>. Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (c) is or may be deemed to be a waiver of Sallie Mae's right to seek to enforce any arbitration

Exhibit 1    page 19 of 49

provision in other cases or against persons in the Settlement Class; or (d) is or may be deemed an admission by Plaintiffs, or any of them, of the existence of any defense or lack of merit concerning any pending or potential claim arising from the facts alleged. In addition, neither the fact of, nor any documents relating to, any withdrawal by Salle Mae from the Settlement, any failure of the Court to approve the Settlement and/or any objections to the Settlement or interventions in the Action may be used as evidence for any purpose whatsoever. The Released Parties may file the Agreement and/or the Final Approval Order and Judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

5.      Parties Authorized To Enter Into The Agreement. Each person executing this Agreement on behalf of a party represents and warrants that he or she is fully authorized to execute the Agreement on such party's behalf and to carry out the obligations provided for therein. Each party represents and warrants that he, she, or it intends to be bound fully by the terms of this Agreement.

6.      No Construction Against Drafter. This Agreement is deemed to have been drafted by all parties, and any rule that a document shall be interpreted against the drafter will not apply to the Agreement.

7.      Agreement Binding On Successors In Interest. This Agreement is binding on and shall inure to the benefit of the respective heirs, successors and assigns of the parties. Without limiting the generality of the foregoing, each covenant and agreement made herein on behalf of the Class Representatives shall be binding upon all Settlement Class

Members as provided in the Final Judgment.

8.      Signatures. The parties and their counsel may sign separate copies of this Agreement, which together will constitute one agreement. In addition, signatures sent in pdf format, by email, or by facsimile constitute sufficient execution and delivery of the Agreement.

9.      Execution In Counterparts. This Agreement is effective upon its execution by all parties. The parties may execute the Agreement in counterparts. All counterparts shall be deemed to constitute one original and execution of counterparts shall have the same force and effect as if all parties had signed the same instrument.

10.     Entire Agreement. This Agreement contains the entire agreement between the parties concerning its subject matter and supersedes all prior understandings, agreements, negotiations, representations, discussions, and writings regarding the subject matter of the Agreement. This Agreement may be amended or modified only by a written instrument signed by all parties or their successors in interest or their duly authorized representatives.

11.     Enforcement. Without affecting the finality of the Judgment entered in accordance with this Agreement, the Court shall retain exclusive and continuing jurisdiction over the parties, including all Settlement Class Members, and the matters set forth in the Agreement, including the implementation and enforcement of the Agreement. All parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

12.     Choice of Law. All terms of this Settlement Agreement and the exhibits attached hereto shall be governed by and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

13.     Amendment; Waiver. This Settlement Agreement shall not be modified

Exhibit 1    page 21 of 49

in any respect except by a writing executed by all the Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, of the same kind or any other kind, whether prior to, subsequent to or contemporaneous with, of this Settlement Agreement.

14.     Each and every exhibit to this Agreement is incorporated by this reference as though fully set forth herein.

15.     Each party to this Agreement warrants that he, she or it is acting upon his, her or its independent judgment and upon the advice of his, her or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party not contained herein.

16.     This Agreement has been carefully read by each of the parties, or the responsible officers thereof, and its contents are known and understood by each of the parties. The Agreement is signed freely by each party executing it.

17.     No party to this Agreement has heretofore assigned, transferred or granted, or purported to assign, transfer or grant, any of the claims, demands, or cause or causes of action disposed of by the Agreement.

18.     In the event any one or more of the provisions contained in this Agreement shall for any reason be held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalid, illegal or unenforceable provision shall be ineffective but shall not in any way invalidate or otherwise affect any other provision.

///

///

Exhibit 1     page 22 of 49

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date(s) indicated below.

PLAINTIFF ANGELO BOTTONI                    PLAINTIFF SHAWNEE SILVA

_____            _____
Angelo Bottoni              Date            Shawnee Silva              Date


PLAINTIFF TRACIE SERRANO                    PLAINTIFF PAUL ROBERTS

_____            _____
Tracie Serrano              Date            Paul Roberts               Date


DEFENDANT SALLIE MAE INC.

By: _____        Date: _JUNE 27, 2013_

Its: _Timothy J. Hynes_
     _SVP Sallie Mac_

*APPROVED AS TO FORM*

GALLO LLP

By: _____        Dated: _____, 2013
        Ray E. Gallo
     Attorneys for Plaintiffs

McGUIREWOODS LLP

By: _____        Dated: _6-26-13_____, 2013
        David L. Hartsell
Attorneys for Defendant Sallie Mae, Inc.

48817425_1.DOCX

Page 23 of 23

Exhibit 1    page 23 of 49

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date(s) indicated below.

PLAINTIFF ANGELO BOTTONI

_____  6-19-13
Angelo Bottoni            Date

PLAINTIFF SHAWNEE SILVA

_____  _____
Shawnee Silva             Date

PLAINTIFF TRACIE SERRANO

_____  _____
Tracie Serrano            Date

PLAINTIFF PAUL ROBERTS

_____  _____
Paul Roberts              Date

DEFENDANT SALLIE MAE INC.

By: _____

Its: _____

Date: _____

*APPROVED AS TO FORM*

GALLO LLP

By: _____
         Ray E. Gallo
      Attorneys for Plaintiffs

Dated: _____, 2013

McGUIREWOODS LLP

By: _____
       David L. Hartsell
Attorneys for Defendant Sallie Mae, Inc.

Dated: _____, 2013

48817425_1.DOCX



IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed
as of the date(s) indicated below.

PLAINTIFF ANGELO BOTTONI                    PLAINTIFF SHAWNEE SILVA

_____            _____
Angelo Bottoni              Date            Shawnee Silva              Date


PLAINTIFF TRACIE SERRANO                    PLAINTIFF PAUL ROBERTS

_____            _____
Tracie Serrano              Date            Paul Roberts        6/18/13  Date


DEFENDANT SALLIE MAE INC.

By: _____        Date: _____

Its: _____


*APPROVED AS TO FORM*

GALLO LLP

By: _____        Dated: _____, 2013
            Ray E. Gallo
        Attorneys for Plaintiffs

McGUIREWOODS LLP

By: _____        Dated: _____, 2013
            David L. Hartsell
    Attorneys for Defendant Sallie Mae, Inc.

48817425_1.DOCX

Page 23 of 23

Exhibit 1     page 25 of 49

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date(s) indicated below.

PLAINTIFF ANGELO BOTTONI                    PLAINTIFF SHAWNEE SILVA

_____            _____
Angelo Bottoni            Date               Shawnee Silva            Date


PLAINTIFF TRACIE SERRANO                    PLAINTIFF PAUL ROBERTS


_____            _____
Tracie Serrano            Date               Paul Roberts            Date


DEFENDANT SALLIE MAE INC.

By: _____        Date: _____

Its: _____


*APPROVED AS TO FORM*

GALLO LLP

By: _____        Dated: _____, 2013
         Ray E. Gallo
       Attorneys for Plaintiffs

McGUIREWOODS LLP

By: _____        Dated: _____, 2013
         David L. Hartsell
Attorneys for Defendant Sallie Mae, Inc.

48817425_1.DOCX

Exhibit 1   page 26 of 49

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date(s) indicated below.

PLAINTIFF ANGELO BOTTONI                          PLAINTIFF SHAWNEE SILVA

_____                  _____
Angelo Bottoni          Date                      Shawnee Silva          Date


PLAINTIFF TRACIE SERRANO                          PLAINTIFF PAUL ROBERTS

_____                  _____
Tracie Serrano          Date                      Paul Roberts          Date


DEFENDANT SALLIE MAE INC.

By: _____              Date: _____

Its: _____


*APPROVED AS TO FORM*

GALLO LLP

By: _____              Dated: _____, 2013
          Ray E. Gallo
        Attorneys for Plaintiffs

McGUIREWOODS LLP

By: _____              Dated: _____, 2013
          David L. Hartsell
Attorneys for Defendant Sallie Mae, Inc.

48817425_1.DOCX

Exhibit 1    page 27 of 49

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date(s) indicated below.

PLAINTIFF ANGELO BOTTONI                    PLAINTIFF SHAWNEE SILVA

_____                  _____
Angelo Bottoni              Date             Shawnee Silva              Date


PLAINTIFF TRACIE SERRANO                     PLAINTIFF PAUL ROBERTS

_____                  _____
Tracie Serrano              Date             Paul Roberts               Date


DEFENDANT SALLIE MAE INC.

By: _____                  Date: _____

Its: _____


                          APPROVED AS TO FORM

GALLO LLP

By: _____                  Dated: _6/27_____, 2013
         Ray E. Gallo
       Attorneys for Plaintiffs

McGUIREWOODS LLP

By: _____                  Dated: _____, 2013
         David L. Hartsell
Attorneys for Defendant Sallie Mae, Inc.

48817425_1.DOCX

Exhibit 1    page 28 of 49

| NOTICE OF PROPOSED CLASS ACTION SETTLEMENT |
|---|

**If you were assessed or paid a collection charge on a charged-off private education loan serviced by Sallie Mae, Inc., you could receive benefits from this class action settlement.**

- Customers of Sallie Mae, Inc. ("Sallie Mae") filed a lawsuit in connection with Sallie Mae's practice of assessing a collection cost (generally 25% of the outstanding balance) on charged-off private education loans serviced by Sallie Mae (the "Collection Cost Assessment").

- The Court has preliminarily approved a Settlement reducing the Collection Cost Assessment to 8.75% of the outstanding balance at charge-off and reducing the portion of any post charge-off payment allocated toward the Collection Cost Assessment to 8.75% of the payment.

- Your legal rights are affected and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **You May:** | **Summary:** | **Due Date:** |
| **Receive a Reduction in the Collection Cost Assessment** | If you take no action, and the Settlement is approved by the Court, Sallie Mae will reduce the Collection Cost Assessment to 8.75% of the outstanding balance at charge-off and reduce the portion of any post charge-off payment allocated toward the Collection Cost Assessment to 8.75% of the payment.<br><br>For loans with an outstanding balance, any and all amounts previously allocated toward collection costs in excess of 8.75% of post charge-off payments shall be reallocated to principal, interest or other fees in accordance with the terms of the promissory notes; in any case where this reallocation satisfies the outstanding loan balance and results in a credit to the borrower, Sallie Mae shall issue a refund in the amount of that credit.<br><br>For loans that have been paid or settled in full:<br><br>Where the amount of collection costs paid in excess of the adjusted 8.75% Collection Cost Assessment exceeds the amount that Sallie Mae wrote off in principal, interest and other fees (excluding collection costs), Sallie Mae shall refund the difference.<br><br>Where the amount of collection costs paid in excess of the adjusted 8.75% Collection Cost Assessment <u>is less than</u> the amount that Sallie Mae wrote off in principal, interest and other fees (excluding | N/A |

|  | collection costs), Sallie Mae shall refund the sum of forty dollars ($40).<br><br>Refund payments shall be made by check payable to the borrower, except that in the case of loans that have a co-borrower(s) or co-signer(s), payment shall be made by check payable jointly to the borrower and co-borrower(s) or co-signer(s). |  |
|---|---|---|
| **Exclude Yourself** | You can exclude yourself from the Settlement and you will not be eligible for any benefits. You keep your right to sue on your own regarding any claims that are part of the Settlement. | [45 days after notice is sent] |
| **Object** | You can file an objection with the Court and explain why you do not like the Settlement and/or Class Counsel's requested attorneys' fee. You may thereafter appear and speak at the Fairness Hearing on your own or through your own lawyer to object to or comment on the Settlement. | [45 days after notice is sent ] |

**These Rights and the Deadlines to Exercise Them Are Explained Below**

## BASIC INFORMATION

1. **Why is this Notice being provided?**

The parties are providing this Notice to inform potential Class Members about the terms of the Settlement of this class action lawsuit before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for those benefits and how to get them. If the Settlement is ultimately approved, the benefits will be provided to Class Members. Magistrate Judge Laurel Beeler of the United States District Court for the Northern District of California in San Francisco is overseeing this class action. The case is known as *Bottoni*, *et al. v. Sallie Mae, Inc.*, Case No. 3:10-cv-03602-LB.

2. **What is this lawsuit about?**

This lawsuit claims that Sallie Mae violated California consumer protection laws by: 1) assessing the Collection Cost Assessment, 2) attempting to collect the Collection Cost Assessment through its third-party debt collectors, and 3) reporting the Collection Cost Assessment as due to credit bureaus. The suit seeks monetary damages and restitution, and declaratory and injunctive relief. You can learn more about the case by reading the Representative Plaintiffs' Second Amended Complaint and Motion for Preliminary Approval on the Settlement Website at www.bottoniclassaction.com.

Sallie Mae vigorously denies all claims asserted against it in the lawsuit, denies all allegations of wrongdoing and liability, and has agreed to settle solely for the purpose of avoiding the burden, expense, risk and uncertainty of litigation.

**3.    What is a class action and who is involved?**

In a class action lawsuit, one or more people, called "Representative Plaintiffs," sue on behalf of people who have similar claims. The people together are called the "Class" or "Class Members." The Representative Plaintiffs, through Class Counsel, have reached the Settlement with Sallie Mae. The Court has allowed, or "certified," this case to proceed as a class action solely for purposes of the Settlement, and all decisions that the Court makes concerning the Settlement will affect all Class Members.

**4.    Why is there a Settlement?**

The Court did not decide in favor of the Representative Plaintiffs or Sallie Mae. The Representative Plaintiffs and Class Counsel believe that the claims asserted in the action have merit, but that the Settlement is in the best interests of the Settlement Class. Class Counsel have evaluated information made available in the course of the action and settlement negotiations and have taken into account the risks and uncertainties of proceeding with the action. Those risks include the uncertainty of prevailing on the merits, proving damages at trial, and prevailing on post-trial motions and potential appeals. Based upon their consideration of these factors, and on the substantial time and expense that will be incurred, Class Counsel believe it is in the best interest of the Settlement Class to settle the action on the terms described below.

**5.    Am I a Class Member?**

The Settlement Class includes all persons in California who, within the period from July 13, 2006 through May 31, 2013, were assessed and/or paid a Collection Cost Assessment in connection with a private education loan serviced by Sallie Mae, as identified by Sallie Mae from its records using its best efforts.

Persons shall be deemed to be "in California" if: 1) they were assessed a Collection Cost Assessment during the Class Period while residing in California, or 2) they were a California resident at the end of any month during the Class Period in which any payment was applied to their Collection Cost Assessment.

If this notice was sent to you, you are a Class Member.

## THE TERMS OF THE PROPOSED SETTLEMENT

This Notice provides a summary of some, but not all, of the terms of the Settlement.  The entire Settlement Agreement is posted on the Settlement Website at www.bottoniclassaction.com.  To take effect, the Settlement Agreement must be approved by the Court.

**6.      What benefits does the Settlement provide?**

The Settlement reduces the Collection Cost Assessment (generally 25% of the outstanding balance at charge-off) to 8.75% of the outstanding balance at charge-off.  It also reduces the portion of any post charge-off payment allocated toward the Collection Cost Assessment to 8.75% of the payment.

For loans with an outstanding balance, any and all amounts previously allocated toward collection costs in excess of 8.75% of post charge-off payments shall be reallocated to principal, interest or other fees in accordance with the terms of the promissory notes; in any case where this reallocation satisfies the outstanding loan balance and results in a credit to the borrower, Sallie Mae shall issue a refund in the amount of that credit.

For loans that have been paid or settled in full:

> Where the amount of collection costs paid in excess of the adjusted 8.75% Collection Cost Assessment exceeds the amount that Sallie Mae wrote off in principal, interest and other fees (excluding collection costs), Sallie Mae shall refund the difference.

> Where the amount of collection costs paid in excess of the adjusted 8.75% Collection Cost Assessment is less than the amount that Sallie Mae wrote off in principal, interest and other fees (excluding collection costs), Sallie Mae shall refund the sum of forty dollars ($40).

Refund payments shall be made by check payable to the borrower, except that in the case of loans that have a co-borrower(s) or co-signer(s), payment shall be made by check payable jointly to the borrower and co-borrower(s) or co-signer(s).

Refund checks not cashed within one hundred eighty (180) days of issuance shall go to Operation HOPE, www.operationhope.org to provide programs and services in California.

**7.      What if a payee on my joint check is deceased?**

If a payee on your joint check is deceased, send proof of death to the Settlement Administrator by mail at [Claims Administrator Address], or via the Settlement Website at www.bottoniclassaction.com.  Upon receiving satisfactory proof of death, the Settlement Administrator shall reissue the check to the surviving payee(s).

**8.      What if a payee on my joint check is missing?**

If a payee on your joint check is missing, notify the Settlement Administrator by mail at [Claims Administrator Address] or via the Settlement Website at

www.bottoniclassaction.com.   The Settlement Administrator shall attempt to contact the missing payee(s) at their last known address, email address or telephone number and, if no response is received within 30 days, may reissue the check to the remaining payee(s).

**9.      If I remain in the Settlement Class, what rights am I giving up?**

If you remain in the Settlement Class, you give up your right to sue in court or arbitration or be part of any other lawsuit or arbitration against Sallie Mae or any other affiliate or subsidiary of SLM Corporation regarding any issues relating to the Released Claims, as more fully described in the Settlement Agreement.   Additionally, all of the Court's orders will apply to you and legally bind you.

**10.     How will Class Counsel and the Representative Plaintiffs be paid?**

Sallie Mae will pay Class Counsel's Court-awarded attorneys' fees and costs, and the Representative Plaintiffs' incentive awards.  Class Counsel's motion for these amounts will be on file with the Court during the time you have to decide whether to participate in the settlement, and you may obtain a copy if you wish.  Sallie Mae has agree not to oppose an application for attorneys' fees in an amount not to exceed $1,200,000, and an amount of costs actually incurred, supported by documentation, not to exceed $50,000.  Sallie Mae further has agreed not to oppose an application for incentive awards to the Representative Plaintiffs, in an amount not to exceed $5,000 each.

**11.     How do I participate in the Settlement?**

You do not need to take any action to participate in the Settlement.  If you take no action, and the settlement is approved by the Court, you will receive the relief described above in Section 6.

**12.     Why would I ask to be excluded?**

You may want to exclude yourself from the Settlement Class if you already have filed (or intend to file) a lawsuit or arbitration against Sallie Mae and/or any of its affiliates based on the settled claims and want to continue that lawsuit or arbitration individually, on your own behalf.  If you do not exclude yourself, you will be legally bound by all orders of the Court in the above case regarding the Settlement Class and the Settlement.  If the Court approves the Settlement, all of the settled claims will be released.  All persons in the Settlement Class who do not ask to be excluded will be forever barred from asserting against the released parties any and all actions, claims, causes of action, or rights of any nature and description whatsoever regarding the settled claims, as more fully described in the Settlement Agreement.

**13.     How do I exclude myself from the Settlement Class?**

You may exclude yourself from the Settlement Class by either mailing a written request for exclusion to the Claims Administrator at [Claims Administrator Address] or by submitting an exclusion   request   online   via   the   Settlement   Administrator's   website   at www.bottoniclassaction.com.

To be effective, a mailed request for exclusion must be signed by the member of the Settlement Class, postmarked no later than [45 days after class notice is sent] and must, as determined in the discretion of the Settlement Administrator, substantially include the following: (i) the Settlement Class Member's name, address, telephone number; (ii) a sentence confirming that he or she is a member of the Settlement Class; and (iii) the following statement (or other words expressing unambiguous desire to be excluded, as determined by the Settlement Administrator ): "*I request to be excluded from the Settlement Class in Bottoni v. Sallie Mae, Inc.*"

Online exclusion requests must be submitted no later than [45 days after class notice is sent] by following the exclusion procedures set forth on the Settlement Website: www.bottoniclassaction.com.

Without the written authorization of the Settlement Class Member, no person other than the Settlement Class Member may exclude that Settlement Class Member from the Settlement Class.

*You will not receive any benefits from the Settlement if you exclude yourself*.

## 14.   Can I object to the Settlement or Class Counsel's requested attorneys' fee?

Yes, but only if you do not exclude yourself from the Settlement Class.  Objecting is telling the Court that some aspect of the settlement is unfair, unreasonable, or inadequate.  You will still be bound by all Court orders, even if your objection is overruled.

## 15.   How do I object to the Settlement or Class Counsel's requested attorneys' fee?

To object, you must file must file a written objection with the United States District Court for the Northern District of California, and serve the same on Class Counsel, and Sallie Mae's Counsel. Objections must be postmarked or delivered no later than [45 days after Class Notice is sent] to be considered by the Court.  If you do not file an objection, you waive your right to appeal any Court order or judgment related to the Settlement.

The written objection(s) must include: (a) the case name and number; (b) a detailed statement of your objection(s) as well as the specific reasons, if any, for each objection, including any evidence and legal authority you wish to bring to the Court's attention  in support of your objection(s); (c) your name, address and telephone number; (d) any other supporting papers, materials or briefs you wish the Court to consider when reviewing the objection(s); (e) information sufficient to identify and establish you as a member of the Settlement Class; and (f) a statement of whether you or your lawyer will appear at the Fairness  Hearing to talk about your objections.

You may object on your own or through an attorney hired at your own expense. If you hire an attorney to represent you, the attorney must file a notice of appearance with the clerk of court no later than [45 days after Class Notice is sent] and otherwise comply with the requirements outlined in this Class Notice.

**Mail or deliver your objection to all of the addresses below, postmarked or delivered no later than [45days after Class Notice is sent].**

| **Defendant's Counsel** | **Class Counsel** | **The Court** |
|---|---|---|
| David Hartsell<br>McGuireWoods LLP<br>77 West Wacker Dr.<br>Chicago, IL 60601 | Ray Gallo<br>Dominic Valerian<br>Gallo LLP<br>1101 5th Ave., Suite 205<br>San Rafael, CA 94901 | Clerk of the Court<br>United States District Court<br>Northern District of California<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

### 16.   When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing on ▇▇, 2013 at ▇▇:00 a.m. at the U.S. District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom C, 15th Floor.  At the Fairness Hearing, the Court will consider if the Settlement is fair, reasonable and adequate, and whether it should be granted final approval.  If there are objections, the Court will consider them.  Class Counsel will also ask the Court for approval of their request for attorneys' fees and costs, and incentive awards for the Representative Plaintiffs.  The Fairness Hearing may be rescheduled without further notice.  You can verify the hearing date on the Court's calendar at http://www.cand.uscourts.gov/lb.

### 17.   Do I have to attend the Fairness Hearing?

No.  Your attendance at the Fairness Hearing is not required.  Class Counsel will answer any questions the Court may have.  If you submit a written objection or comment, you do not have to come to the Fairness Hearing to talk about it.  As long as you filed your written objection on time, the Court will consider it.  However, you or your attorney may attend the hearing if you would like at your own expense.

### 18.   May I speak at the Fairness Hearing?

Yes.  You may speak at the Fairness Hearing, but only if you filed a written objection as described above.  You may also speak through an attorney hired at your own expense.  If you want to speak at the Fairness Hearing, your objection must include a statement that you intend to appear and be heard at the Fairness Hearing.  Be sure to include your name, address, telephone number, and your signature.  You must also include some information about what you intend to say at the hearing and if you will be represented by a lawyer, as described in Section 15 above.  You must send copies of your objection to all of the addresses listed in Question 15 above.  It must be postmarked or delivered no later than [45 days after Class Notice is sent].

## THE LAWYERS REPRESENTING YOU

**19.**  **What lawyers represent Class Members in this case?**

The Court has provisionally appointed Ray Gallo and Dominic Valerian from the law firm Gallo LLP to represent Class Members.  They are called "Class Counsel."

## GETTING MORE INFORMATION

**20.**  **Where can I get more information?**

This Notice only summarizes the proposed Settlement.  Complete copies of certain case-related documents, including the Settlement Agreement, are available on the Settlement Website at www.bottoniclassaction.com.  If you wish to contact Class Counsel, you may contact them by sending an email to dvalerian@gallo-law.com, calling (866) 599-5430, or writing to: Dominic Valerian, Gallo LLP, 1101 5th Ave., Suite 205, San Rafael, CA 94901.

**Please do not contact the Court, Sallie Mae, or Sallie Mae's lawyers concerning this Notice.**

48817610_1.DOCX

McGUIREWOODS LLP
David L. Hartsell (*pro hac vice*)
Tammy L. Adkins (*pro hac vice*)
77 West Wacker Drive, Ste. 4100
Chicago, IL 60601-1818
(312) 849-8100
(312) 849-3690 (fax)
dhartsell@mcguirewoods.com
tadkins@mcguirewoods.com

Susan L. Germaise (State Bar No. 176595)
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
(310) 315-8200
(310) 315-8210 (fax)
sgermaise@mcguirewoods.com

Attorneys for Defendant Sallie Mae, Inc.

### THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO BOTTONI; PAUL ROBERTS; TRACIE SERRANO; and SHAWNEE SILVA for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SALLIE MAE, INC.; and DOES 1 through 1,000, inclusive,<br><br>Defendants. | Case No. 3:10-cv-03602-LB<br><br>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE CLASS** |

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF  CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE CLASS

Exhibit B       Exhibit 1     page 37 of 49

WHEREAS, a putative class action is pending in this Court entitled *Angelo Bottoni, Paul Roberts, Tracie Serrano, and Shawnee Silva, for themselves and all other similarly situated v. Sallie Mae, Inc. and Does 1 through 1,000, inclusive*, Case No. 3:10-cv-03602-LB (the "Action");

WHEREAS, the parties to the Action have agreed, subject to Court approval following notice to the proposed Settlement Class (as described in Paragraph 6 below) and a hearing, to settle this Action upon the terms and conditions set forth in the Settlement Agreement (the "Agreement") filed with this Court;

WHEREAS, this Court has reviewed the Agreement, as well as the files, records and proceedings to date in this matter;

WHEREAS, for purposes of this Order, capitalized terms used below shall have the meaning ascribed to them in the Agreement, unless otherwise defined; and

WHEREAS, for purposes of the Action, this Court has subject matter and personal jurisdiction over the parties, including all Settlement Class Members.

NOW, THEREFORE, based on this Court's review of the Agreement and all of the files, records, and proceedings herein, the Court concludes, upon preliminary examination, that the Agreement and Settlement appear fair, reasonable and adequate, and within the range of reasonableness for preliminary settlement approval, and that a hearing should and will be held after notice to the Settlement Class to determine whether the Settlement should be approved as fair, reasonable, and adequate and final judgment entered in the Action based upon the Agreement.

IT IS HEREBY ORDERED THAT:

1.     Preliminary Approval Of Proposed Settlement. The Agreement, including all exhibits thereto, is preliminarily approved as fair, reasonable and adequate and within the range of reasonableness for preliminary settlement approval. The Court finds that: (a) the Agreement resulted from extensive arm's length negotiations; and (b) the Agreement is sufficient to warrant notice of the Settlement to persons in the Settlement Class and a full hearing on the approval of the Settlement.

2.    <u>Class Certification For Settlement Purposes Only</u>. Pursuant to Federal Rule of Civil Procedure 23(c), the Court conditionally certifies, for settlement purposes only, the following Settlement Class:

> All persons in California[1] who, within the period from July 13, 2006 through May 31, 2013, were assessed and/or paid a Collection Cost Assessment in connection with a private education loan serviced by Sallie Mae, as identified in the Class List to be generated by Sallie Mae from its records using its best efforts.

In connection with this conditional certification, the Court makes the following preliminary findings:

    (a)    The Settlement Class appears to be so numerous that joinder of all members is impracticable;

    (b)    There appear to be questions of law and fact common to the Settlement Class for purposes of determining whether this settlement should be approved;

    (c)    Plaintiffs' claims appear to be typical of the claims being resolved through the proposed settlement;

    (d)    Plaintiffs appear to be capable of fairly and adequately protecting the interests of the Settlement Class Members in connection with the proposed settlement;

    (e)    For purposes of determining whether the Settlement is fair, reasonable and adequate, common questions of law and fact appear to predominate over questions affecting only individual Settlement Class Members. Accordingly, the Settlement Class appears to be sufficiently cohesive to warrant settlement by representation; and

    (f)    For purposes of settlement, certification of the Settlement Class appears to be superior to other available methods for the fair and efficient settlement of the claims of the Settlement Class Members.

---

[1] Persons shall be deemed to be "in California" if: 1) they were assessed a Collection Cost Assessment during the Class Period while residing in California, or 2) they were a California resident at the end of any month during the Class Period in which any payment was applied to their Collection Cost Assessment.

3

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONALLY CERTIFYING SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE CLASS

Exhibit B    Exhibit 1    page 39 of 49

3.    Class Representatives. Plaintiffs are provisionally appointed as class representatives for the Settlement Class.

4.    Class Counsel. The Court provisionally appoints Ray Gallo and Dominic Valerian of the law firm Gallo LLP as Class Counsel for the Settlement Class. The Court finds that counsel is competent and capable of exercising all responsibilities as Class Counsel for the Settlement Class.

5.    Class Notice. Class Notice shall be sent within twenty-one (21) days following entry of this Order, as follows:

(a)    Mailed Notice. Kurtzman Carson Consultants is approved as the Settlement Administrator. The Settlement Administrator will provide notice by electronic mail, to the extent Sallie Mae has a valid email address for the Settlement Class Member, and otherwise by U.S. Mail, to be sent to the last known addresses of the Settlement Class Member, according to Sallie Mae's records.

(b)    Internet Notice. The Claims Administrator will establish and maintain an Internet site using a domain name of www.bottoniclassaction.com, dedicated to the Settlement, on which the Class Notice will be posted.

6.    Findings Concerning Class Notice. The Court finds that the foregoing method of Class Notice is the best practicable notice under the circumstances and is reasonably calculated to apprise Settlement Class Members of the pendency of this Action and their right to object to the Settlement. The Court further finds that the method of sending Class Notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process and Federal Rule of Civil Procedure 23.

7.    Fairness Hearing. A Fairness Hearing shall be held before the Honorable Laurel Beeler, Courtroom C, 15th Floor, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Ave., San Francisco, California 94102 on ___, at __, as set forth in the Class Notice, to determine whether the Agreement is fair, reasonable and adequate and should be approved. Papers in support of final approval of the Agreement shall be filed with the Court at least thirty-

4

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE CLASS

Exhibit B        Exhibit 1     page 40 of 49

five (35) days before the Fairness Hearing. Papers in support of the incentive award to Plaintiffs and Class Counsel's application for an award of attorneys' fees, costs and expenses shall be filed with the Court no later than fifteen (15) days after the date that Class Notice is sent. The Fairness Hearing may be postponed, adjourned or continued by order of the Court without further notice to the Settlement Class. After the Fairness Hearing, the Court may enter Final Judgment in accordance with the Agreement that will adjudicate the rights of the Settlement Class Members with respect to the Released Claims being settled.

8.   Requests for Exclusion. All requests to be excluded from the Settlement Class must be in writing and mailed to the Settlement Administrator or, alternatively, submitted on-line via the Settlement Administrator's website. To be effective, a written request for exclusion must be signed by the member of the Settlement Class, postmarked no later than forty-five (45) days after the date that  the Class Notice is sent, and must, as determined in the discretion of the Settlement Administrator, substantially include the following: (i) the Settlement Class Member's name, address, telephone number; (ii) a sentence confirming that he or she is a member of the Settlement Class; and (iii) the following statement (or other words expressing unambiguous desire to be excluded, as determined by the Settlement Administrator ): "I request to be excluded from the Settlement Class in Bottoni v. Sallie Mae, Inc." Alternatively, a Settlement Class Member may request exclusion no later than forty-five (45) days after the date that the Class Notice is sent by following the exclusion procedures set forth on the Settlement Administrator's website for this Settlement. Without the written authorization of the Settlement Class Member, no person other than the Settlement Class Member may exclude that Settlement Class Member from the Settlement Class.

9.   Objections And Appearances. Any Settlement Class Member may present a written objection(s), if he or she has any, explaining why the Settlement should not be approved as fair, reasonable and adequate, or why attorneys' fees and expenses to Class Counsel should not be awarded in the amounts requested. Any Settlement Class Member who wishes to object to any aspect of the Settlement must file written objection(s) with the United States District Court for the

5
[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONALLY CERTIFYING SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE CLASS

Exhibit B        Exhibit 1     page 41 of 49

1  Northern District of California, and serve the same on Class Counsel, and Sallie Mae's Counsel.

2  Objections must be postmarked or delivered no later than forty-five (45) days after the date the

3  Class Notice is sent.  The written objections(s) must include: (a) a detailed statement of the

4  Settlement Class Member's objection(s) as well as the specific reasons, if any, for each objection,

5  including any evidence and legal authority the Settlement Class Member wishes to bring to the

6  Court's attention in support of his/her objection(s); (b) the Settlement Class Member's name,

7  address and telephone number; (c) any other supporting papers, materials or briefs the Settlement

8  Class Member wishes the Court to consider when reviewing the objection(s); (d) information

9  sufficient to identify and establish the individual objecting as a member of the Settlement Class;

10  and (e) a statement of whether the objector or his or her lawyer will appear at the Final Approval

11  Hearing to talk about his or her objections. If a Settlement Class Member hires an attorney to

12  represent him or her, the attorney must file a notice of appearance with the clerk of court no later

13  than forty-five (45) days after Class Notice is sent, or as the Court otherwise may direct.

14       10.    Further Papers In Support Of Settlement And Fee Application. Any responses to

15  objections shall be filed with the Court not less than three court days before the Fairness Hearing.

16       11.    Other Actions Enjoined/Stayed. Pending the Fairness Hearing, and in aid to this

17  Court's jurisdiction to implement and enforce the Settlement, Plaintiffs and all Settlement Class

18  Members and all persons purporting to act on behalf of Settlement Class Members are enjoined,

19  directly, on a representative basis or in any other capacity, from asserting, commencing,

20  prosecuting, or continuing any of the Released Claims against Salle Mae or any of the other

21  Released Parties in any action, arbitration or proceeding in any court, arbitral forum or tribunal.

22       12.    Effect of Failure to Approve the Agreement. In the event the Agreement is not

23  approved by the Court, or for any reason the parties fail to obtain a Final Judgment as

24  contemplated in the Agreement, or the Agreement is terminated pursuant to its terms for any

25  reason, then the following shall apply:

26

27

28

1        (a)    All orders and findings entered in connection with the Agreement shall

2    become null and void and have no further force and effect, shall not be used or referred to for any

3    purposes whatsoever, and shall not be admissible or discoverable in any other proceeding;

4        (b)    The conditional certification of the Settlement Class pursuant to this Order

5    shall be vacated automatically and void; no doctrine of waiver, estoppel or preclusion shall be

6    asserted in any litigated certification proceedings in the Action; and the Agreement and its

7    existence shall be inadmissible to establish any fact relevant to class certification or any alleged

8    liability of Defendant for the matters alleged in the Action or for any other purpose;

9        (c)    The parties shall be returned to their respective positions in the Action as of

10   November 29, 2012, before the Parties executed their Term Sheet that lead to this Settlement, as if

11   no Settlement had been negotiated or entered into;

12       (d)    Nothing contained in this Order is, or may be construed as, any admission

13   or concession by or against Defendant or Plaintiffs on any point of fact or law; and

14       (e)    Neither the settlement terms nor any publicly disseminated information

15   regarding the Settlement, including, without limitation, the class notice, court filings, orders and

16   public statements, may be used as evidence for any purpose whatsoever. In addition, neither the

17   fact of, nor any documents relating to, Defendant's withdrawal from the settlement, any failure of

18   the Court to approve the settlement and/or any objections or interventions may be used as

19   evidence for any purpose whatsoever.

20   **IT IS SO ORDERED.**

21

22   Dated:_____       _____

                                                              **Magistrate Judge Laurel Beeler**

23   48817783_1.DOCX

24

25

26

27

28

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONALLY CERTIFYING SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE CLASS

McGUIREWOODS LLP
David L. Hartsell (*pro hac vice*)
Tammy L. Adkins (*pro hac vice*)
77 West Wacker Drive, Ste. 4100
Chicago, IL 60601-1818
(312) 849-8100
(312) 849-3690 (fax)
dhartsell@mcguirewoods.com
tadkins@mcguirewoods.com

Susan L. Germaise (State Bar No. 176595)
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
(310) 315-8200
(310) 315-8210 (fax)
sgermaise@mcguirewoods.com

Attorneys for Defendant Sallie Mae, Inc.

# THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO BOTTONI; PAUL ROBERTS; TRACIE SERRANO; and SHAWNEE SILVA for themselves and all others similarly situated, | Case No.  3:10-cv-03602-LB |
| Plaintiffs, | **[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT** |
| v. | |
| SALLIE MAE, INC.; and DOES 1 through 1,000, inclusive, | |
| Defendants. | |

THIS MATTER came before the Court for final approval of the proposed class settlement. The Court has considered all papers filed and proceedings in this matter and held a hearing on _____, at which time the parties and all other interested persons were afforded the opportunity to be heard in support of and in opposition to the proposed settlement. Based on the papers filed

1   with the Court and presentations made to the Court at the hearing, it is hereby ORDERED,

2   ADJUDGED, AND DECREED as follows:

3          1.      The definitions and provisions of the Settlement Agreement ("Agreement") are

4   hereby incorporated as though fully set forth herein.  For purposes of this Final Approval Order

5   and Judgment, all capitalized terms used hereafter shall have the meaning ascribed to them in the

6   Agreement, unless otherwise noted.

7          2.      The Court has jurisdiction over the subject matter of the Agreement, and with

8   respect to and over all parties to the Agreement, including all Settlement Class Members.

9          3.      The Court hereby approves the Settlement, including the plans for implementation

10  and distribution of the settlement relief, and finds that the Settlement is, in all respects, fair,

11  reasonable and adequate to the Settlement Class Members, within the authority of the parties and

12  as the result of extensive arm's length negotiations.

13         4.      The Court has considered and balanced: (1) the strength of the plaintiffs' case; (2)

14  the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

15  class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

16  discovery completed and the stage of the proceedings; (6) the experience and views of counsel;

17  (7) whether a governmental participant is present; and (8) the reaction of class members to the

18  proposed settlement.  *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir.

19  2004).  On balance, the relevant *Churchill* factors weigh in favor of approving the Settlement.

20  This Court finds and concludes, for purposes of this Settlement, that the applicable requirements

21  of Federal Rule of Civil Procedure 23(a) and 23(b)(3) have been satisfied with respect to the

22  Settlement Class and settlement, and specifically, that: (a) the number of members of the

23  Settlement Class are so numerous that joinder of all members thereof is impracticable; (b) there

24  are questions of law and fact common to the Settlement Class; (c) named plaintiffs ' claims are

25  typical of the claims of the Settlement Class they seek to represent; (d) named plaintiffs and Class

26  Counsel have fairly and adequately represented and protected the interests of the Settlement

27  Class; (e) questions of law or fact common to class members predominate over any questions

28

1  affecting only individual members, and (f) a class action is superior to other available methods for

2  fairly and efficiently adjudicating the controversy.

3         5.      Pursuant to Federal Rule of Civil Procedure 23(c), the Court certifies, for

4  settlement purposes only, the following Settlement Class:

5        All persons in California[1] who, within the period from July 13, 2006 through

6        May 31, 2013, were assessed and/or paid a Collection Cost Assessment in
      connection with a private education loan serviced by Sallie Mae, as identified in

7        the Class List to be generated by Sallie Mae from its records using its best efforts.

8         6.      The Court confirms the appointment of Plaintiffs Angelo Bottoni, Paul Roberts,

9  Tracie Serrano, and Shawnee Silva as class representatives for the Settlement Class.

10         7.      The Court confirms the appointment of Ray Gallo and Dominic Valerian of the

11  law firm Gallo LLP as Class Counsel for the Settlement Class. The Court finds that counsel is

12  competent and capable of exercising all responsibilities as Class Counsel for the Settlement Class.

13         8.      This Final Approval Order and Judgment does not constitute an expression by the

14  Court of any opinion, position or determination as to the merit or lack of merit of any of the

15  claims or defenses of Plaintiffs, the Settlement Class Members or defendant Sallie Mae, Inc.

16  Neither the Agreement, nor any act performed or document executed pursuant to or in furtherance

17  of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence

18  of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties;

19  or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or

20  omission of the Released Parties in any civil, criminal or administrative proceeding in any court,

21  administrative agency or other tribunal. The Released Parties may file the Agreement and/or this

22  Final Approval Order and Judgment in any action or proceeding that may be brought against them

23

24  [1] Persons shall be deemed to be "in California" if: 1) they were assessed a Collection Cost

25  Assessment during the Class Period while residing in California, or 2) they were a California

26  resident at the end of any month during the Class Period in which any payment was applied to
their Collection Cost Assessment.

27

28

1  in order to support a defense or counterclaim based on principles of res judicata, collateral

2  estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim

3  preclusion or issue preclusion or similar defense or counterclaim.

4         9.    This Court hereby dismisses this Action, and as to the Released Claims contained

5  in the Agreement, this Action is dismissed with prejudice.

6        10.    As outlined in the Order Approving Class Counsel's Application for Fees, Costs

7  and Incentive Awards, the fees, costs and incentive awards have been approved.  In accordance

8  with the terms of the Agreement, Defendant shall:

9            (a) pay to Class Counsel attorneys' fees, costs and expenses in the sum of

10  _____ (not to exceed $1,250,000.00); and

11            (b) pay an incentive award to each of the four named plaintiffs in the amount of

12  $_____ (not to exceed $5,000.00).

13        11.    Plaintiffs and each Settlement Class Member, on behalf of themselves and each of

14  their respective past, present and future heirs, executors, administrators, trustees, custodians,

15  representatives, agents, attorneys, insurers and assigns, and any person or entity acting on their

16  behalf, by operation of the Judgment, will be deemed to have fully and finally released and

17  forever discharged Sallie Mae, Inc., its parent company SLM Corporation, and each and all of

18  their respective present, former and future direct and indirect parent companies, affiliates,

19  subsidiaries, agents, successors, and predecessors-in-interest and all of the aforementioneds'

20  prior, current and future respective officers, directors, employees, attorneys, shareholders, agents,

21  independent contractors, vendors, and assigns (collectively, the "Released Parties"), from any and

22  all demands, claims, causes of action, counterclaims, affirmative defenses, duties, obligations or

23  liabilities for injunctive and declaratory relief, whether arising under local, state or federal law,

24  Constitution, statute, contract, law, rule, regulation, any regulatory promulgation (including, but

25  not limited to, any opinion or declaratory ruling) or case law, whether known or unknown,

26  suspected or unsuspected, asserted or unasserted, in law or in equity, foreseen or unforeseen,

27  actual or contingent, that have been, or could have been, asserted by Plaintiffs and the Settlement

28

1   Class (whether or not the Class Member objects to the Settlement), or their agents,

2   representatives, successors or assigns, in the Action or any other proceeding or forum, arising out

3   of the allegations in the Second Amended Complaint (collectively, the "Released Claims").

4           12.     Without limiting the foregoing, the Released Claims specifically extend to claims

5   arising from Sallie Mae's Collection Cost Assessment on the Settlement Class Members' private

6   education loans serviced by Sallie Mae that Plaintiffs and Settlement Class Members do not know

7   or suspect to exist in their favor at the time that the Settlement, and the releases contained herein,

8   become effective. This paragraph constitutes a waiver of, without limitation as to any other

9   applicable law, Section 1542 of the California Civil Code and any other applicable federal or state

10  statute, case law, rule or regulation relating to limitations on releases.

11          13.     In aid to this Court's jurisdiction to implement and enforce the Settlement,

12  Plaintiffs and all Settlement Class Members and all persons purporting to act on behalf of

13  Settlement Class Members are enjoined, directly, on a representative basis or in any other

14  capacity, from asserting, commencing, prosecuting or continuing any of the Released Claims

15  against Defendants or any of the other Released Parties in any action, arbitration or proceeding in

16  any court, arbitral forum or tribunal.

17          14.     The Court finds that the program of Class Notice set forth in the Agreement and

18  preliminarily approved by the Court was the best notice practicable under the circumstances. The

19  Class Notice provided due and adequate notice of these proceedings and of the matters set forth

20  therein, including the Agreement, to all parties entitled to such notice and satisfied the

21  requirements of Federal Rule of Civil Procedure 23 and the requirements of constitutional due

22  process.

23          15.     Without affecting the finality of this Final Order and Judgment in any way, the

24  Court retains continuing jurisdiction over: (a) implementation of the Agreement until all acts

25  agreed to be performed pursuant to the Agreement have been performed; and (b) all parties to this

26  action and Settlement Class Members for the purpose of enforcing and administering the

27  Agreement.

28

1    16.    In the event that the Agreement does not become effective in accordance with its

2  terms, then this Final Approval Order and Judgment shall be vacated, the Settlement Class shall

3  be decertified and the Agreement and all orders entered in connection therewith shall become null

4  and void and of no further force and effect.

5

6         **IT IS SO ORDERED.**

7  Dated:_____         _____

8                                               **Magistrate Judge Laurel Beeler**

9  48818110_1.DOCX

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                    THE UNITED STATES DISTRICT COURT

9                        Northern District of California

10                         San Francisco Division

11   ANGELO BOTTONI; PAUL ROBERTS;        No. 3:10-cv-03602-LB
     TRACIE SERRANO; and SHAWNEE
12   SILVA for themselves and all others similarly   **DECLARATION OF HON. LAYN R.
     situated,                            PHILLIPS (RET.) IN SUPPORT OF
13                                         PLAINTIFFS' MOTION FOR
                          Plaintiffs,      PRELIMINARY APPROVAL OF
14                                         SETTLEMENT AGREEMENT**

15        v.                               Hon. Laurel Beeler

16   SALLIE MAE, INC.; and DOES 1 through  Date:  June 27, 2013
     1,000, inclusive,                     Time: 11:00 a.m.
17                                         Courtroom C, 15th Floor
                          Defendants.
18

19

20

21

22

23

24

25

26

27

28

I, LAYN R. PHILLIPS, declare:

1.  I am a former District Judge of the U.S. District Court for the District of Oklahoma. I am currently a partner in the law firm of Irell & Manella LLP, where I specialize in alternative dispute resolution. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the U.S. Courts of Appeals for the Ninth, Tenth, and Federal Circuits. Along with litigating cases, a considerable amount of my professional time is devoted to serving as a mediator and arbitrator in connection with complex cases like this one. I have more than twenty years of dispute resolution experience, having conducted thousands of mediations and settlement conferences in all types of litigation, including complex class actions, securities fraud actions, and shareholder derivative actions. Without in any way waiving the mediation privilege, I make this declaration based on personal knowledge and am competent to testify as to the matters set forth herein.

2.  As the independent mediator, I presided over the settlement discussions and negotiations between the parties in this action, including two all-day, in-person mediation sessions.

3.  The first mediation session was conducted in San Francisco, California on April 12, 2012. Before that mediation session, both sides submitted extensive mediation briefs to me, which I reviewed and analyzed. During the first mediation session, I met separately with the parties and their counsel. During these separate caucus sessions, we discussed the strengths and weaknesses of each side's respective positions. I made many arguments to both sides in an effort to find and create common ground between the parties' respective positions. After a full day session, the parties remained far apart, and the mediation was suspended while litigation continued.

4.  After several months of further discovery and continued negotiation, the parties agreed to hold a second mediation session on November 30, 2012. Before the second session, the parties submitted and exchanged updated mediation briefs. During the November 2012 mediation session, I met jointly and separately with the participants. The discussions were spirited and each party vigorously advocated their respective positions throughout the mediation. During the

**PHILLIPS DECLARATION**

3:10-cv-03602-LB

Exhibit 2  page 2 of 4

session, the parties reached a settlement in principle and executed a term sheet reflecting the terms of the settlement.

5.      Based on the materials provided to me by the settling parties and my extensive participation in the process, I am familiar with the factual and legal issues involved in the action, including the allegations asserted by Plaintiffs and the defenses to liability and damages asserted by Sallie Mae. I also am familiar with the process by which the parties negotiated the settlement.  I believe that the settlement was reached by the parties acting at arm's-length, carefully, and in good faith.

6.      Based on my knowledge of the action, all of the materials provided to me, the efforts of counsel, the rigor of the negotiations, the litigation risks, and the benefits achieved in the settlement, I believe this is a fair and adequate settlement of all the class action claims, and that it should be approved by the Court.  The reduction in the Collection Cost Assessment from 25% to 8.75% represents a significant benefit to the Class.  Were litigation to continue, Plaintiffs would face a substantial likelihood of a worse outcome, and could recover nothing at all.  Moreover, this case presents numerous appellate issues for both sides, which could have caused it to drag on for years.  The settlement here ensures that the Class will receive certain benefits without being exposed to the risks of trial and appeal.

7.      After the parties agreed on the substantive terms of the settlement, I assisted the parties in negotiating an agreement that Sallie Mae would not oppose a request for attorneys' fees of $1.2 million or less and a request for costs of $50,000 or less.  I observed and believe that these numbers were negotiated by the parties at arm's length and in good faith and are fair and reasonable in light of the complexity of the Action, the nature of the underlying claims, the factual and legal contentions and positions of the parties, the terms of the settlement, and the nature and quality of plaintiff's counsel's efforts.

8.      In sum, from my involvement as the mediator in the action, I confirm that this was hard-fought litigation by skilled, experienced, and effective counsel for all parties.  The result is a fair and equitable settlement for all concerned and on all points.  While settlement approval is the

1    province of the Court, I respectfully urge approval of all the terms of the settlement, including the

2    requested attorneys' fees and expenses.

3            I declare under penalty of perjury under the laws of the United States of America that the

4    foregoing is true and correct and that I executed this declaration at Newport Beach, California on

5    June 18, 2013.

6

7            _____

                LAYN R. PHILLIPS

8            Former United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PHILLIPS DECLARATION**

3:10-cv-03602-LB

Exhibit 2    page 4 of 4

SEARCH  Entire Site ▾  GO

### The Global Leader for Financial Dignity

FIND A HOPE CITY
CONTACT US
SUBSCRIBE TO NEWSLETTER

SHOPPING CART (0)
HOPE STORE
MAKE A DONATION


HOPE Social Media

Calendar of Events　Blog　FAQ　Home Buyers Assistance　Small Business and Entrepreneurship　Credit Counseling　Youth Financial Education

Home/About Us/ **History & Mission**

**History & Mission**
HOPE Global Spokesman
Office of the Chairman
20th Anniversary Celebration
HOPE Annual Reports
HOPE Newsletters
HOPE Board of Directors
Executive Management
HOPE Government Affairs
HOPE Partners
HOPE Heroes
Employment Opportunities
FAQ

## The Global Leader in Financial Dignity

▶

The mission of Operation HOPE, Inc. (HOPE) is silver rights empowerment, making free enterprise work for everyone. We accomplish this through our work on the ground as the nonprofit private banker for the working poor, the underserved and struggling middle class. We achieve our mission by being the best-in-class provider of financial literacy empowerment for youth, financial capability for communities, and ultimately, financial dignity for all.

- Our **Banking on Our Future** division focuses on keeping the most at risk youth from repeating the cycles of poverty and dispair that has trapped so many in their families and communities by teaching them basic financial literacy, or what we call "the global language of money."
- Our **HOPE Business In A Box** / **Gallup HOPE Index** division focuses on inspiring a generation of young people to become future American assets of economic energy, small business and entrepreneurship.
- Our **HOPE Financial Dignity Centers** give clients the resources to improve their financial situations. Through our 700 Credit Scores Initiative, we approve clients as soon as they seek assistance, commit to the resolution of primary credit denial factors, and work to raise credit scores on average 120 points over 18 months of active counseling.
- Our **HOPE Coalition America** division is a national partner of FEMA addressing financial disaster preparedness, response, and recovery. HCA responded to and served more than 200,000 Hurricane Katrina survivors and is currently responding to assist survivors of Hurricane Sandy.
- Our **HOPE Global Initiatives** is HOPE's international division focused on the global expansion of financial dignity and empowerment for youth and families throughout the world. HGI advises, develops and implements financial dignity programs that promote a peaceful, sustainable global economy. HOPE currently operates in nine provinces in South Africa and has partnership offices in Saudi Arabia and Morocco.
- **HOPE Government Relations & Public Policy,** along with HOPE Forums, advance responsible public policy and help to shape engaged public opinion. The recent HOPE Global Financial Dignity Summit featured US Federal Reserve Chairman Ben Bernanke, boasted more than 1,500 delegates from 30 countries, and was covered by 50 major media outlets.

**Programs**
 **HOPE Financial Literacy Empowerment Centers**
 **Banking on Our Future**
 **HOPE Coalition America**
 **HOPE Corps**
 **HOPE Office of Small Business & Entrepreneurship**
 **HOPE Fellowship & Internship Program**
 **HOPE Office of Innovation Research and Assessment**
 **HOPE Forums**

**Services**
 **HOPE Express**
 **HOPE Advisors**
 **Mortgage HOPE Crisis Hotline**
 **Credit Counseling**
 **Foreclosure Counseling**

Since its inception in 1992, HOPE has served more than 2 million individuals. HOPE has also directed more than $1.5 billion in private capital to America's low-wealth communities, maintains a growing army of 20,000 HOPE Corps volunteers, and currently serves more than 300 U.S. cities, as well as South Africa, Saudi Arabia, Morocco, and the United Arab Emirates.

Operation HOPE also operates the **HOPE Financial Dignity Center Atlanta at Ebenezer Church**, located on the campus of the King Center and as the anchor tenant of the Martin Luther King, Sr. Community Resource Complex.  Martin Luther King, Sr, or "Daddy King" as he was called, co-pastored Ebenezer Church with his son Dr. Martin Luther King, Jr. during the civil rights movement, and served on the board of a bank for 40-years; a little known fact.  Daddy King was also focused on making free enterprise work for all, as his son was focused in the last years of his life on poverty eradication and economic justice.





**Homebuyers Program**

**Small Business Training**

**inner-City Cyber Cafe**

**Workshops & Classes**



Initiatives

**5 Million Kids Initiative**

**Global Money Initiative**

**Make Smart Cool Tour**

**Gallup-HOPE Financial Literacy Index**

**Global Dignity**

**HOPE Global Initiatives**

**HOPE-Roundtable Financial Literacy Framework Agreement**

**HOPE Business In A Box**

**700 Credit Score Communities**



Get Involved

**Give**

**Serve**

**Partner**

**Contact**

| ABOUT US | PROGRAMS & SERVICES | INITIATIVES | GUIDANCE & RESOURCES | GET INVOLVED |
|---|---|---|---|---|
| History & Mission | Banking on Our Future | HOPE Business in a Box | Credit Cards and Credit Scores | GIVE |
| HOPE Global Spokesman | HOPE Financial Dignity Centers | America 2020 | Banking Basics | SERVE |
| Office of the Chairman | HOPE Coalition America | The Gallup-HOPE Index | Home Ownership | PARTNER |
| 20th Anniversary Celebration | Operation HOPE Fellowship and | HOPE Global Initiatives | Buying and Insuring a Car | SUBSCRIBE |
| HOPE Annual Reports |    Internship Program | Operation HOPE - Financial | Health & Life Insurance | |
| HOPE Newsletters | HOPE Express |    Services Roundtable Financial | Taxes | |
| HOPE Board of Directors | HOPE Forums |    Literacy Framework Agreement | Small Business Entrepreneurship | |
| Executive Management | HOPE Advisors | Make Smart Cool Tour | Student Loan and Scholarship | |
| HOPE Government Affairs | HOPE Corps | 5 Million Kids Initiative | Youth and Financial Education | |
| HOPE Partners | Office of Small Business & | | Computer Basics | |
| HOPE Heroes |    Entrepreneurship | | | |
| Employment Opportunities | HOPE Office of Innovation | | | |
| FAQ |    Research and Assessment | | | |

Calendar of Events  |  In the News  |  Blog  |  Find a HOPE City Near You  |  Contact Us  |  Sign up for the HOPE Newsletter

**globaldignity.org**    **5millionkids.org**    **bankingonourfuture.org**

Operation HOPE is a 501(c)3 non-profit organization, © MMVIII Operation Hope, Inc. All Rights Reserved
Developed by Epicenter - Web Application Development Company