UNITED STATES DISTRICT COURT

Northern District Of California

San Francisco Division

| | |
|---|---|
| ANGELO BOTTONI, PAUL ROBERTS; TRACIE SERRANO, and SHAWNEE SILVA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br>SALLIE MAE, INC., and DOES 1 through 1,000, inclusive,<br>Defendants. | No. C 10-03602 LB<br><br>**ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARDING ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS, AND AUTHORIZING ENTRY OF JUDGMENT OF DISMISSAL WITH PREJUDICE**<br><br>[ECF Nos. 148 & 157] |

**INTRODUCTION**

Plaintiffs and defendant Sallie Mae, Inc. ("Sallie Mae") agreed to settle this class action lawsuit, which alleged that Sallie Mae violated California law by assessing, collecting, and reporting a "Collection Cost Assessment" (generally 25% of the unpaid balance) on charged-off private student loans. *See* Second Amended Complaint, ECF No. 37.[1] On August 2, 2013, the court granted plaintiffs' unopposed motion to preliminarily approve the settlement, conditionally

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 10-03602 LB
ORDER

certify the settlement class, appoint plaintiffs as class representatives and their attorneys as class counsel, direct that notice of the proposed settlement be disseminated to class members, and temporarily enjoin class members from asserting released claims. Preliminary Approval Order, ECF No. 143. Plaintiffs then moved for attorney's fees, costs, and incentive awards to the class representatives (ECF No. 148) and for final approval (ECF No. 157). The court held a hearing on November 21, 2013, and grants the motions, finding the parties' settlement fair, adequate and reasonable. Because the requested amounts are reasonable, the court further confirms its provisional appointments of class representatives and class counsel, awards $1,200,000 in attorney's fees and $28,959 in litigation costs to class counsel, and awards a $5,000 incentive award to each of the four class representatives.

**FACTS**

Plaintiffs are four former students at the California Culinary Academy who took out private (not federally-guaranteed) student loans serviced by Sallie Mae, Inc. ("Sallie Mae") and thereafter defaulted on the loans. Second Amended Complaint, ECF No. 37 at 3, 5-8, ¶¶ 8-10, 22-33. The plaintiffs signed promissory notes that provided that they agreed to pay reasonable collection costs incurred by the note holder in enforcing the terms of the notes. *Id.* at 4, ¶ 14. Upon each plaintiff's default, Sallie Mae charged off the loan and placed it with one of numerous third-party collection agencies for collection. *Id.* at 4, ¶ 16; Valerian Final Approval Decl. ¶ 14, ECF No. 157-1 at 4. At the time of charge-off, Sallie Mae assessed a "Collection Cost Assessment" (generally 25% of the unpaid balance), generally reflecting the contingency fees charged to Sallie Mae by its collection agencies on amounts collected. Valerian Final Approval Decl. ¶¶ 15-16.

The operative complaint charges six claims based on Sallie Mae's collection fees and debt collection practices: (1) a violation of Cal. Civ. Code §1671(b), which prohibits unreasonable liquidated damages provisions in contracts; (2) violations of California Business & Professions Code § 17200 *et seq.*, known as the Unfair Competition Law, which prohibits fraudulent, unfair, or unlawful conduct; (3) a breach of the promissory notes' express terms, which allow only the collection of reasonable and actually-incurred costs; (4) a claim for declaratory relief based on the

assessment, collection, and attempted collection of the collection fees; (5) a violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq.*, which prohibits the collection of unlawful fees and unlawful debt collection practices; and (6) a violation of the Consumer Credit Reporting Agencies Act, California Civil Code § 1785.1 *et seq.*, which prohibits the furnishing of incomplete or inaccurate information to a credit reporting bureau. Order re Motion to Dismiss SAC, ECF No. 50. Following some discovery (including production by Sallie Mae of more than 20,000 pages of documents, Sallie Mae's responses to interrogatories, and the depositions of all plaintiffs) and two private mediation sessions with Judge Layn Phillips (Ret.), the parties reached a settlement agreement, which the court preliminarily approved on August 2, 2013. Valerian Final Approval Decl. ¶¶ 6-7, 23-25; Preliminary Approval Order, ECF No. 143.

In summary form, the settlement is as follows. *See* Valerian Final Approval Decl. Ex. 1 (Settlement Agreement). The parties agree to certification of a settlement class defined as:

> [A]ll persons in California[2] who, within the period from July 13, 2006 through May 31, 2013 (the "Class Period"), were assessed and/or paid a Collection Cost Assessment in connection with a private education loan serviced by Sallie Mae, as identified in the class list[3] to be generated by Sallie Mae from its records using its best efforts.

Settlement Agreement § II.N. Sallie Mae shall reduce the Collection Cost Assessment to 8.75% for each of the class member's private education loans. Settlement Agreement § III.B.1. For each loan with an outstanding balance: 1) any and all amounts previously allocated toward collection costs in excess of 8.75% of post charge-off payments received from the class member shall be reallocated to principal, interest or other fees in accordance with the terms of the promissory notes; in any case where this reallocation satisfies the outstanding loan balance and results in a credit to

---

[2] Persons shall be deemed to be "in California" if: 1) they were assessed a Collection Cost Assessment during the Class Period while residing in California, or 2) they were a California resident at the end of any month during the Class Period in which any payment was applied to their Collection Cost Assessment. Settlement Agreement § II.N.

[3] On August 8, 2013, Sallie Mae lodged a copy of the class list with the court.

the borrower, Sallie Mae shall pay a refund in the amount of that credit; 2) prospectively, no more than 8.75% of any and all future payments shall be allocated toward collection costs. *Id*. § III.B.1.(a). For loans that have been paid or settled in full: 1) where the amount of collection costs paid by the borrower in excess of the adjusted 8.75% Collection Cost Assessment exceeds the amount that Sallie Mae wrote off in principal, interest and other fees (excluding collection costs), Sallie Mae shall refund the difference; 2) where the amount of collection costs paid in excess of the adjusted 8.75% Collection Cost Assessment is less than the amount that Sallie Mae wrote off in principal, interest and other fees (excluding collection costs), Sallie Mae shall refund the sum of forty dollars ($40). *Id*. § III.B.1.(b). Excess funds, representing refund checks not cashed within 180 days, will be distributed as a *cy pres* award to Operation HOPE to provide services in California. *Id*. § III.B.1.(d). The settlement administrator is independent claims administrator Kurtzman Carson Consultants LLC ("KCC"). *Id*. § II.M. After judgment becomes final, class members shall release all claims against Sallie Mae "arising out of the allegations in the Second Amended Complaint." *Id*. § III.K. Sallie Mae also agreed not oppose an application for attorneys' fees not to exceed $1,200,000, costs not to exceed $50,000, and incentive awards to the named plaintiffs not to exceed $5,000 each. *Id*. § III.C.

Following the court's preliminary approval and conditional certification of the settlement, Sallie Mae gave KCC a list that included 40,517 class members' names, addresses, and available email addresses. Carameros Decl. ¶ 4, ECF No. 157-2. KCC updated the addresses using the National Change of Address database. *Id*. KCC also identified 101 duplicate entries, resulting in 40,416 unique entries. *Id.* On August 22, 2013, KCC electronically mailed the class notice to each of the 27,103 class members with email addresses. *Id*. ¶ 5. Of the 27,103 emails sent, 19,266 were successfully sent and 7,837 were returned as undeliverable. *Id*. ¶ 5. On August 23, 2013, KCC physically mailed the class notice by U.S. mail to each of the 20,575 class members that did not have an email address or had an email that was returned as undeliverable on the class member list. *Id*. ¶ 6. KCC conducted address searches using credit and other public source databases on all returned mail with no forwarding address. *Id*. ¶ 7. They were able to find addresses for and re-

4

1  mailed notice packets to all but 616 class members. *Id*.

2  Class members were given until October 7, 2013 to object to or exclude themselves from the
3  Proposed Settlement. Preliminary Approval Order, ECF No. 143 at 9. Out of 40,416 class
4  members, 46 class members submitted exclusion requests (nine of them late) and two class
5  members submitted objections, which are addressed below. Carameros Decl. Re Exclusion
6  Requests, ECF No. 161, ¶ 10; Objection Letters, ECF Nos. 154, 156.  Five other class members
7  sent correspondence directly to the court but none of them objected to the settlement or requested
8  exclusion.  *See* Letters Received from Class Members Filed by the Court, ECF Nos. 151, 153,
9  155, 158-59.

10  On September 6, 2013, plaintiffs filed an unopposed motion for attorneys' fees, costs, and
11  incentive awards for the class representatives. ECF No. 148. On October 17, 2013, plaintiffs filed
12  a motion requesting final approval of the settlement. ECF No. 157.

13  **ANALYSIS**

14  **I.    JURISDICTION**

15  The court has jurisdiction under 28 U.S.C. § 1332(d)(2).

16  **II.   NOTICE**

17  The court finds that the notice to the settlement class, as described in the court's earlier order
18  provisionally approving the class, provided the best practicable notice to the members of the class
19  and satisfied the requirements of due process. As discussed above, the parties employed claims
20  administrator Kurtzman Carson Consultants LLC to oversee the class notification process. KCC
21  mailed notices to class members, conducted address searches on returned mail, responded to class
22  member inquiries, and maintained a settlement website. Carameros Decl. ¶¶ 2-10. The court finds
23  that these procedures were adequate.

24  **III.  CLASS CERTIFICATION**

25  For the reasons and under the standards set forth in the court's preliminary approval order, the
26  court finds that the proposed settlement class here still meets the requirements of Federal Rule of
27  Civil Procedure 23(a) and (b)(3). Preliminary Approval Order, ECF No. 143 at 4-6. Therefore, the

28

settlement class as certified shall consist of:

> All persons in California who, within the period from July 13, 2006 through May 31, 2013 (the "Class Period"), were assessed and/or paid a Collection Cost Assessment in connection with a private education loan serviced by Sallie Mae, as identified in the class list that Sallie Mae lodged with this court.

Excluded from the settlement class are persons who submitted valid and timely requests for exclusion, following the procedures in the Class Notice.

**IV.    FINAL APPROVAL OF SETTLEMENT AGREEMENT**

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court finds that the proposed settlement is fair and appropriate under the *Hanlon* factors. A consideration of the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, including the risk of maintaining class action status throughout the trial, shows that these factors favor approval of the settlement. Sallie Mae denies any liability for the class members' claims (Settlement Agreement § I.C.) and absent settlement, the class would face the possibility of denial of class certification, enforcement of individual arbitration agreements, summary judgment, or loss at trial. Final Approval Motion at 10. In addition, this case presents numerous complex and novel issues, which would prove costly to litigate and could lead to protracted appellate litigation. *Id.* The settlement represents a substantial benefit to the class. The

1  collection costs will be reduced by 65% in most cases and class members will recover an
2  estimated $76 million in debt relief without a claims process. Valerian Final Approval Decl. ¶¶ 26-
3  28. The settlement is the product of serious, non-collusive, arms' length negotiations by
4  experienced counsel with the assistance of a private mediator. *Id.* ¶¶ 23-25.
5      The extent of discovery and stage of the proceedings also support settlement. Before
6  mediation, the parties engaged in extensive discovery over several years. *See generally,* Docket.
7  Class counsel propounded substantial written discovery on Sallie Mae; obtained third party
8  discovery from four of Sallie Mae's debt collectors; obtained and reviewed more than 20,000
9  pages of records; and defended the four class representatives' depositions. Valerian Final
10 Approval Decl. ¶¶ 6-7.
11     The positive reaction of class members to the proposed settlement also favors approval. From
12 a class of 40,616, only 46 class members submitted exclusion requests, which amounts to
13 approximately 0.1% of the class.  Carameros Decl. Re: Exclusion Requests, ECF No. 161, ¶ 3.  In
14 addition, only two class members submitted objections.
15     First, Tina Ubaldi[4] and Chanee Thurston objected to the proposed settlement on the grounds
16 that its release is unreasonably broad because they are concerned Sallie Mae might attempt to
17 assert the *Bottoni* release as an affirmative defense in another class action against Sallie Mae
18 pending in the Northern District of California.  *See* Ubaldi and Thurston Objection Letter, ECF
19 No. 156.  They later withdrew their objection through their attorney.  *See* Withdrawal of Objection
20 Letter, ECF No. 160.
21     Second, class member Amber Vega submitted an objection to the proposed settlement but her
22 letter does not identify the basis for her objection. *See* Vega Objection Letter, ECF No. 154.
23 Instead it asserts that Ms. Vega withdrew from school after only 10 days but the school retained
24 her full tuition (which was paid with Sallie Mae loan funds) because Ms. Vega did not follow the

---

[4] According to Class Counsel, Ms. Thurston is a class member but Ms. Ubaldi is not. *See* Valerian Final Approval Decl. ¶ 38.

1 school's withdrawal procedures. *Id.* Ms. Vega contends she did not follow the school's withdrawal
2 procedures because the school failed to provide her with adequate notice of these procedures. *Id.*
3 Ms. Vega's objection is overruled because she does not assert that anything about the proposed
4 settlement is unfair, unreasonable, or inadequate, nor provide any basis for her objection.
5 Moreover the settlement does not release the potential claims described in Ms. Vega's objection
6 letter, if any, which she retains.

7 In sum, the court finds that viewed as a whole, the proposed settlement is "fair,
8 adequate, and reasonable."

## V. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

The record establishes that counsel served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8). *See* Chernila Decl., ECF No. 141-1; Carameros Decl. ¶ 3, Ex. A.

## VI. ATTORNEY'S FEES

Class counsel requests a fee award of $1,200,000, which represents a multiplier of 1.29 on their lodestar of $927,568. *See* Fees Motion, ECF No. 148 at 6. Sallie Mae agreed not to oppose a fee request of up to this amount. Settlement Agreement § III.C.

**A. Statutory Authority for Awarding Plaintiffs Attorneys' Fees**

Rule 23(h) of the Federal Rules of Civil Procedure provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Attorney's fees provisions included in proposed class action agreements must be "fundamentally fair, adequate and reasonable." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The court is not bound by the parties' settlement agreement as to the amount of attorneys' fees. *Id.* at 943.

Plaintiffs also are entitled to reasonable attorneys' fees under California Code of Civil Procedure sections 1021.5, 1785.31(d), and 1788.30(c). "Attorney fees are recoverable under [California Code of Civil Procedure section 1021.5] (1) by a successful party, (2) in an action that has resulted in the enforcement of an important right affecting the public interest, (3) if a

8
C 10-03602 LB
ORDER

significant benefit has been conferred on the general public or a large class of persons, and (4) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1343 (2006). Each of these requirements has been met here. First, plaintiffs qualify as the prevailing party because the Settlement provides Plaintiffs and Class Members the primary relief sought—a substantial reduction in the Collection Cost Assessment. Second, this lawsuit resulted in the enforcement of an important right affecting the public interest because it protected and enforced consumer rights. *See Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (for purposes of awarding attorney fees under §1021.5, action challenging bank fees as a liquidated damage was appropriately characterized as consumer protection action with important public interest at stake) *overruled on other grounds by Olson v. Auto. Club of S. Cal.*, 42 Cal. 4th 1142, 1151 (2008); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 578 (2004) ("It is well settled that attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people.") Third, this lawsuit conferred a significant benefit on a large class of persons by substantially reducing the collection charges assessed to over 40,000 Sallie Mae borrowers and co-borrowers. Fourth, the necessity and financial burden of private enforcement make a fee award appropriate because an individual plaintiff, particularly one in default on student loans, cannot be expected to litigate complex claims against a defendant with substantial resources and defenses. *See Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (consumers seeking to vindicate a $1,000–$2,000 repair could not be expected to litigate against Hyundai's demonstrably robust and resourceful defenses thus necessity and financial burden of private enforcement made §1021.5 award appropriate).

As the prevailing parties on their claims under the Consumer Credit Reporting Agencies Act and the Rosenthal Fair Debt Collection Practices Act, Plaintiffs are entitled to recover their reasonable attorneys' fees. *See* Cal. Civ. Code §1785.31(d) ("[T]he prevailing plaintiffs in any action commenced under [the CCRAA] section shall be entitled to recover … reasonable attorney's fees"); Cal. Civ. Code §1788.30(c) ("Reasonable attorney's fees, which shall be based

9
C 10-03602 LB
ORDER

on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor….").

**B. Lodestar Method**

The lodestar analysis is the appropriate method to determine fees in this case. The Ninth Circuit has held that when state substantive law applies, attorney's fees are to be awarded in accordance with state law. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, "[i]n so-called 'fee shifting' cases, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Here, plaintiffs brought five claims under state statutory and common law, so the lodestar method is appropriate.

The lodestar is produced by multiplying the number or hours reasonably expended by counsel by reasonable hourly rate. *Id*. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of factors, including: 1) the results obtained, 2) the novelty and complexity of the questions involved, 3), the quality of the representation, 4) the contingent risk presented, and 5) the extent to which the litigation precluded other employment by the attorneys. *Id*.; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." *Ketchum*, 24 Cal. 4th at 1132.

According to the figures provided in the attorney declaration, class counsel seeks a lodestar amount of $927,568.25, which breaks down as follows:

| Name | Rate | Hours | Lodestar Amount |
|---|---|---|---|
| Ray E. Gallo | $650.00 | 193.90 | $126,035.00 |
| Dominic Valerian | $450.00 | 1,590.60 | $715,770.00 |
| Patrick Chesney | $315.00 | 68.50 | $21,577.50 |
| Sharon S. Laveson | $450.00 | 45.90 | $20,655.00 |
| Samantha Midkiff | $225.00 | 23.20 | $5,220.00 |
| Kurt Siegal | $225.00 | 39.80 | $8,955.00 |
| Marc van Anda | $215.00 | 77.30 | $16,619.50 |
| Nikolaus A. Woloszczuk | $225.00 | 34.05 | $7,661.25 |
| Amy Elmgren | $145.00 | 35.00 | $5,075.00 |
| **Total** | | **2,108.25** | **$927,568.25** |

*See* Valerian Fees Decl. Ex. 2.

1  The first step in the lodestar analysis requires courts to determine a reasonable hourly rate for
2 the fee applicant's services. This determination is made by examining the prevailing market rates
3 in the relevant community charged for similar services by "lawyers of reasonably comparable
4 skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895 n.11 (1994). The "relevant
5 legal community" in the lodestar calculation is generally the forum in which the district court sits.
6 *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000) *overruled on other grounds in Gonzalez v.*
7 *Arizona*, 677 F.3d 383 (9th Cir. 2012).

8  In support of their hourly rates, class counsel's declaration attests to the qualifications and
9 experience of the attorneys and other staff members who worked on this matter and identifies
10 comparable cases in the Northern District of California where comparable rates were awarded.
11 Valerian Fees Decl. ¶¶ 24-36. Class counsel also supports their rates with declarations from
12 experienced attorneys Robert Mills, Christopher Sullivan, and Michael Kelly attesting to the
13 reasonableness of Mr. Gallo's and Mr. Valerian's rates; an August 10, 2012 San Francisco Daily
14 Journal article summarizing the findings in a survey by Valeo Partners LLC that showed the
15 average 2012 hourly billable rates for partners and associates in San Francisco are $675 and $482,
16 respectively; and San Francisco attorney rates for 2011 and 2012 from ALM's Daily Report Going
17 Rate survey. *Id.* Exs. 3-5, 7-8. On this record, and based on the court's own knowledge of rates for
18 similar cases with counsel of similar experience, the court finds that class counsel's rates are
19 reasonable.

20  Class counsel submitted a declaration showing they devoted more than 2,108 hours to the
21 investigation, litigation and resolution of this case through September 4, 2013 and lodged
22 contemporaneous billing records for *in camera* review. Valerian Fees Decl. ¶ 20, Ex. 2. The
23 number of hours expended by class counsel is reasonable given the amount of money at stake, the
24 fact-intensive nature of the claims, the legal challenges to plaintiffs' theories, and the parties'
25 discovery disputes. The time spent does not appear to be unnecessary, duplicative, or excessive.

26  Plaintiffs request that the court enhance the total fee award by applying a multiplier of 1.29.
27 *See* Fees Motion at 11. The court finds this multiplier is appropriate given the relevant factors.

28

11
C 10-03602 LB
ORDER

1  First, by permanently reducing the total collection charges assessed against class members at
2  charge-off (generally 25% of the outstanding balance) to 8.75%, thereby permanently reducing the
3  total collection costs assessed against class members by an estimated $76 million, the settlement
4  provides a significant benefit to the class. Valerian Fees Decl. ¶ 12. Second, this case presented
5  complex legal and factual issues, particularly with respect to ascertaining the amount of untracked
6  collection costs incurred by 30 or more debt collectors, the proper measure of recoverable
7  collection costs under California law, vicarious liability under the Rosenthal Fair Debt Collections
8  Practices Act, availability of punitive damages under the Consumer Credit Reporting Agencies
9  Act, and National Bank Act and Fair Credit Reporting Act preemption. *Id.* ¶¶ 18-19. Third, class
10 counsel litigated this case on a contingency basis and undertook a substantial of risk of non-
11 payment given the legal and factual challenges this case presents. *Id.* ¶¶ 17-19. Fourth, devoting
12 over 2,108 hours to litigating this case precluded class counsel from litigating matters they would
13 otherwise have accepted. *Id.* ¶ 22.

### C. Percentage-of-Recovery Cross-Check

Even where the lodestar method is appropriate the Ninth Circuit encourages courts to cross-check their calculations against the percentage of recovery method. *See In re Bluetooth*, 654 F.3d at 944. Applying the percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* at 942 (citations omitted).

Here, the settlement reduces class members' collection costs by an estimated $76 million, primarily through debt relief. *See* Valerian Fees Decl. ¶ 12. Other courts have recognized the value of debt relief and included it as part of the settlement fund. *See, e.g., Cosgrove v. Citizens Auto. Fin., Inc.,* CIV.A. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) (finding debt forgiveness provides a valuable award to class members that, unlike a non-monetary award such as a coupon, does not require careful scrutiny to ensure it has value to the class); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (including $1.3 million in delinquent loan forgiveness in the value of settlement fund for purposes of calculating class counsel's fee award under the

percentage-of-recovery method); *Smith v. CRST Van Expedited, Inc.*, 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) (including $9 million in debt relief in measuring the total value of settlement for purposes of calculating class counsel's fee award under the percentage-of-recovery method). Moreover, the debt relief here is particularly valuable because student loan debt is not dischargeable in bankruptcy absent "undue hardship." 11 U.S.C. § 523(a)(8).

The requested $1,200,000 in attorney's fees amounts to approximately 1.5% of the estimated $76 million reduction in Collection Cost Assessments. As the attorney's fees sought here are well below the 25% benchmark, the percentage of the fund cross-check strongly supports the requested award.

## VII.   LITIGATION COSTS

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Here, the parties' settlement agreement provides that Sallie Mae will not oppose Plaintiffs' application for "costs actually incurred, supported by documentation, not to exceed $50,000." Settlement Agreement, III.C. Class counsel seeks reimbursement of $28,959 in litigation expenses and provide records that document their claim. *See* Fees Motion, ECF No. 148 at 14; Valerian Fees Decl. ¶ 37, Ex. 9.  The costs do not alter the amount awarded to the class, and Sallie Mae does not dispute the sufficiency of Class Counsel's documentation.  Accordingly, the court finds that these submissions support an award $28,959 in costs.

## VIII.   INCENTIVE AWARDS

The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to

1  which the class has benefitted from those actions, . . . [and] the amount of time and effort the
2  plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.
3  2003). "Such awards are discretionary . . . and are intended to compensate class representatives for
4  work done on behalf of the class, to make up for financial or reputational risk undertaken in
5  bringing the action, and, sometimes, to recognize their willingness to act as a private attorney
6  general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth
7  Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to
8  determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian
9  Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

   Here, all four of the class representatives were deposed, compiled documents, and answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email for three years, dedicated more than 25 hours to the case, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. Valerian Fees Decl. ¶ 38. In addition, because the average reduction in Collection Cost Assessments under the settlement agreement is approximately $2,696, the $5,000 incentive awards are not disproportionate like those at issue in *Radcliffe*. *See* Valerian Final Approval Decl. ¶ 27. Under the circumstances, the court approves the four $5,000 incentive awards plaintiffs request for Angelo Bottoni, Paul Roberts, Tracie Serrano, and Shawnee Silva.

## CONCLUSION

The court hereby confirms its provisional appointments of class representatives and class counsel as reflected in its preliminary approval order, grants final approval of the settlement, awards $1,200,000 in attorneys' fees and $28,959 in litigation costs to class counsel, and awards $5,000 as an incentive award to each class representative (for a total of $20,000). This disposes of ECF Nos. 148 and 157.

**IT IS SO ORDERED.**

Dated: November 21, 2013

_____
LAUREL BEELER
United States Magistrate Judge

C 10-03602 LB
ORDER